[Civ. No. 8195. Fourth Dist., Div. One. Apr. 17, 1967.]

CAROL HANKS et al., Cross-complainants and Respondents, v. CARTER & HIGGINS OF CALIFORNIA, INC., Cross-defendant and Appellant.

Luce, Forward, Hamilton & Scripps and Robert G. Steiner for Cross-defendant and Appellant.

McDaniel & Pinney and Franklin D. McDaniel for Cross-complainants and Respondents.

LAZAR, J. pro tem.*—The appellant (a cross-defendant below) seeks to be relieved of a judgment rendered after a jury verdict on special interrogatories in favor of respondents (defendants and cross-complainants below) who theretofore, upon the granting of a motion for a directed verdict, had been held liable to the plaintiff upon an indemnity agreement. No appeal has been taken from the judgment in favor of the plaintiff, Insurance Company of North America, or from the judgment in favor of cross-defendant Clark E. Higgins.

Hanks, Conard & Sons, Inc. (Hanks Conard) a family corporation organized to perform construction work, contacted Carter & Higgins of California, Inc., a corporation (Carter & Higgins), through Clark E. Higgins (Higgins) an employee. Higgins held a special power of attorney authorizing him to issue contractors' performance bonds in the name of Insurance Company of North America (INA). INA suffered a loss on a bond issued to Hanks Conard and brought suit for reimbursement from Hanks Conard and also from H. E. Hanks, his wife Dartha, Orbia Hanks and his wife, Carol, the four individuals having executed an indemnity agreement applicable to such a loss. None of the indemnitors carried any management responsibility in Hanks Conard although they did hold office and were shareholders and H. E. Hanks as treasurer signed checks to Carter & Higgins for insurance premiums. In the action brought by INA the two couples cross-complained against Carter & Higgins and Higgins for reasons to be developed later, but generally alleging any liability to

*Assigned by the Chairman of the Judicial Council.

INA by cross-complainants to be the result of negligence of the cross-defendants. The special interrogatories submitted to the jury on the cross-complaint resulted in a verdict that Carter & Higgins was an agent for hire of cross-complainants and was guilty of negligence as such agent; Higgins was not found to be an agent of the cross-complainants and not to be negligent as an agent.

We now detail the facts leading to the problems suggested in the foregoing statement.

Mr. Conard, president of Hanks Conard spoke to Higgins concerning the corporation's prospective needs for performance bonds. He was told the principals in the corporation would need to furnish Carter & Higgins with financial statements and an indemnity agreement in favor of the bonding company and that Hanks Conard must purchase its miscellaneous business insurance from Carter & Higgins. Mr. Conard was given a single copy of an indemnity agreement in favor of INA and returned it with the signatures of the two Hanks couples; he also supplied the financial statements. The documents were passed to and held at the San Diego office of INA in which city Carter & Higgins also had its office. No copy of the indemnity agreement was delivered to or asked for by either Hanks Conard or the indemnitors.

Several bonds were issued on behalf of Hanks Conard and the business insurance of the corporation was written through Carter & Higgins as required by that company. On November 27, 1962, Orbia and Carol Hanks sent Carter & Higgins a letter revoking the indemnity agreement. On December 13, 1962, H. E. Hanks sent Carter & Higgins a letter of revocation written in the first person singular and not signed by his wife, Dartha; the letter was addressed "To whom it may concern." The mailing of the letters to Carter & Higgins did not comply with the requirement of the indemnity agreement that a notice of revocation should be sent to the head office of INA at a specific address in Philadelphia, Pennsylvania.

Carter & Higgins sent the Orbia-Carol Hanks letter to the San Diego office of INA and in turn on December 18, 1962, were told by the latter not to write any more bonds because of the "problem with indemnity." The evidence does not disclose what happened to the H. E. Hanks' letter after it reached Carter & Higgins, but it does appear in evidence without contradiction, and the implied finding of the jury is that the local office of INA was not informed of it. Sometime in late December 1962, or early January 1963, Carter &

Higgins called to the attention of Mr. Conard of Hanks Conard the fact of the H. E. Hanks' letter and also stated no additional bonds could be written until a new financial statement had been supplied.

Sometime in November or December 1962, no evidence being given as to the date, Carter & Higgins issued an INA *bid* bond. The bid of Hanks Conard being successful, Carter & Higgins through Higgins on February 15, 1963, issued the performance bond upon which INA suffered the loss which in turn has triggered the subject litigation. No evidence was produced to indicate that the direction of December 18, 1962, against further bonds to Hanks Conard was modified or retracted before February 15, 1963.

At no time did the indemnitors have contact with Carter & Higgins, except as indicated with respect to H. E. Hanks, other than by return of the indemnity agreement and the mailing of the letters of revocation.

The cross-complaint sets forth a cause of action against Carter & Higgins based on negligence. No appeal has been taken from the judgment in favor of cross-defendant Clark Higgins so we are not concerned with the propriety of that determination except as it might affect the questions presented on this appeal. Nor are we concerned with the judgment obtained by INA against the Hanks since no appeal was taken on that phase of the litigation.

As the cause of action sounds in negligence we are immediately confronted with the necessity of defining the legal relationship of appellant and respondents with a view to determining what legal duty, if any, ran from appellant and whether if found to be present such legal duty was breached.

At this point we may note the contention of appellant that respondent Dartha Hanks at no time undertook in any way to revoke the indemnity agreement and in no way could have a claim against appellant. This question we shall consider later.

As the foundation for their assertion of responsibility upon the part of appellant, respondents contend that Carter & Higgins was their agent, and that such agency was either gratuitous, in which event the failure to exercise slight care in the performance of the agency would be the test of liability, or for hire, in which event a failure to exercise ordinary care would impose liability. By its answers to the special interrogatories the jury made a finding of agency for hire and of

failure to exercise ordinary care. These findings are controlling upon this court insofar as there is any substantial evidence to support them, and they are otherwise sustainable in law. The questions posed by this appeal compel a review of the law of agency in order properly to test the adequacy of respondents' case in the trial court. "An agent is one who represents another, called the principal, in dealings with third persons. Such representation is called agency." (Civ. Code, § 2295.) "An agent for a particular act or transaction is called a special agent. All others are general agents." (Civ. Code, § 2297.) "An agency may be created, and an authority may be conferred, by a precedent authorization or a subsequent ratification." (Civ. Code, § 2307.) "An agent has such authority as the principal, actually, or ostensibly, confers upon him." (Civ. Code, § 2315.) "Agency is ordinarily an issue of fact, and in resolving it the trial court may draw inferences from the conduct of the parties as shown by the evidence." (*Rubens* v. *Texam Oil Corp.*, 239 Cal.App.2d 78, 82 [48 Cal.Rptr. 411].) (See *Associated Creditors' Agency* v. *Haley Land Co.*, 239 Cal.App.2d 610, 614 [49 Cal. Rptr. 1].) But it may not be held ". . . that one who performs a mere favor for another, without being subject to any legal duty of service and without assenting to any right of control, can be an agent. This is not the law. 'Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.' (Rest., Agency, § 1) 'The principal must in some manner indicate that the agent is to act for him, and the agent must act or agree to act on his behalf and subject to his control.' (*Id.* comment on subsec. 1.)" (*Edwards* v. *Freeman*, 34 Cal.2d 589, 591-592 [212 P.2d 883].) However, it is true that: "An agency relationship may be informally created. No particular words are necessary, nor need there be consideration. All that is required is conduct by each party manifesting acceptance of a relationship whereby one of them is to perform work for the other under the latter's direction. (See 1 Cal.Jur., Agency, 694, 696, §§ 5, 7; Rest. Agency, §§ 15, 16, 26, 34, 225.)" (*Malloy* v. *Fong*, 37 Cal.2d 356, 372 [232 P.2d 241].)

The case was tried and submitted to the jury upon theories of agency and of negligence. This is shown by the pretrial order and the special verdict submitted to the jury as well as

by the instructions given by the court. In the pretrial order the issue is stated to be ''Whether Carter & Higgins of California, Inc., and Clark E. Higgins were under any duty to notify the plaintiff [INA] of the receipt of the notices of revocation of the agreement of June 22, 1962'' and, secondly, ''Negligence, proximate cause, and damages with reference to said duty.''

Respondents assert that uncontroverted evidence affords a basis for an inference of agency supporting an obligation upon the part of Carter & Higgins. The evidence relied upon is itemized by respondents in this fashion: '' (1) Mr. Higgins stated to Mr. Conard, as one of the requirements to be met before any bonds would be issued to Hanks, Conard & Sons, Inc., that all principals involved in the corporation must sign an indemnity agreement to be supplied by Carter & Higgins of California, Inc.; (2) One and only one copy of such agreement was typed up by Mrs. Raper and delivered to Mr. Conard who presented it to the four Hanks for signing; (3) All four of the Hanks signed, and then this one copy of the agreement was returned to Carter & Higgins of California, Inc., as required; (4) The letters of November 27, 1962, and December 13, 1962, plaintiff's Exhibits 3 and 4, respectively, although received by Carter & Higgins of California, Inc., were not returned to the Hanks or sent to the INA Home Office in Philadelphia; neither were they acknowledged in any way.''

Counsel for respondents evidence a high degree of ingenuity in developing the inferences necessary to sustain the jury's finding of agency. These inferences, however, are not reasonably supported by the evidence.

Carter & Higgins dealt only with Hanks Conard, a corporation and its managing officers, the Conards. In demanding the indemnity agreement Carter & Higgins were doing so only as the agent of INA. The Hanks, although technically principals of the corporation, did not sign the indemnity agreement as such, (admittedly a valueless gesture), but as individuals. The acceptance of the indemnity agreement by Carter & Higgins was as agent of INA, not as agent of the Hanks, and likewise not as agent of Hanks Conard. If at the establishment of the indemnity agreement, as outlined in the first three evidentiary points made by respondents, any principal-agency relationship was raised by inference, it was between the Hanks as individuals and either Hanks Conard, the corporation, or Mr. Phillip Conard. No showing has been made to

indicate that the Hanks, as individuals, were entitled to be identified with the corporation or that Carter & Higgins were aware that the Hanks, as individuals, intended or expected to rely upon Carter & Higgins. No showing was made of any legal infirmity upon the part of the Hanks which would excuse them from being chargeable with the terms of their contract and knowledge of the conditions for relief of responsibility under the indemnity agreement.

 The authorities mentioned above indicate that formation of an agency relationship is a bilateral matter. Words or conduct by both principal and agent are necessary to create the relationship; it may be taken for granted that either may speak or act first.

The facts of the instant case point up the significance of the rule. When the indemnity agreement was executed and delivered to Carter & Higgins nothing occurred upon which to found a thought that Carter & Higgins would assume further responsibility with respect to that document for the account of the Hanks. Any such thought could only be an assumption by the Hanks manufactured out of whole cloth. Nothing pointed out by respondents and nothing in the evidence discloses a responsibility upon the part of Carter & Higgins to the Hanks either to speak or to act. To hold that the silence of Carter & Higgins at the time of receiving the indemnity agreement constituted an offer of agency with respect to the contract involved would be tantamount to saying that every agent automatically becomes an agent for the opposite contracting party unless the intention be expressly disavowed. Respondents persist in overlooking the fact that Carter & Higgins had no responsibility to concern itself with the future course of the indemnity agreement; it had no responsibility to explain anything not asked of it; it had no responsibility to provide a copy; and also, INA, not Carter & Higgins, required the signing of the indemnity agreement. The effort of respondents to impose an involuntary obligation upon appellant as suggested by the statement ''From the fact of requiring the Hanks to sign an indemnity agreement and then not providing them with a copy, it is readily possible to infer an implied undertaking by Carter & Higgins of California, Inc., to act on behalf of the Hanks with reference to matters arising under the agreement,'' we reject as being without merit.

Respondents seek to bolster their argument by pointing out

what happened thereafter. But what was done thereafter cannot be used to create a factual situation and legal relationship which did not exist before. The mailing of the letters of revocation to Carter & Higgins are not proof, or even evidence, that Carter & Higgins by its handling of the indemnity agreement transaction and silence with respect to matters which could have been of interest to the Hanks, but about which no inquiry was made and about which Carter & Higgins had no duty to speak, thereby meant that Carter & Higgins was expressing a willingness to act as agent for the Hanks in future matters. This answers also the untenable proposition that failure to respond to the letters was an indication of an assumed agency. The agency must first be shown to exist before there could be a duty to respond. Respondents seek to lift themselves by their bootstraps. The mailing of the letters of revocation meant only that the Hanks thought that was one way they could proceed and peradventure thought incorrectly. No legal excuse for not knowing or finding out about the terms of their contract has been shown.

We conclude the facts surrounding the execution and delivery of the indemnity agreement and before the delivery of the revocation letters do not support a finding of agency for the Hanks because: (1) The revocation letters may not be taken into account, having happened after the event;

(2) Carter & Higgins provided the indemnity agreement as agent for and solely in the name of INA;

(3) Carter & Higgins was dealing with Hanks Conard, a corporate entity separate and distinct from the Hanks and, as far as the evidence goes, solely for the benefit of the client corporation;

(4) Carter & Higgins made no statements and performed no acts in relation to the Hanks which were unique or unusual in the business world or were otherwise equivocal so as to warrant on their part a belief that some special relationship was intended or contemplated;

(5) The execution of the indemnity agreement by the Hanks in and of itself connotes no "communication" by them to Carter & Higgins of a request or intention that Carter & Higgins should thereafter act *for them* in all matters pertaining to the indemnity agreement;

(6) At no time before the revocation letters did the Hanks indicate either by word or act to Carter & Higgins an intention or understanding of personal reliance upon Carter & Higgins with respect to the indemnity agreement which might

have placed Carter & Higgins under an obligation to define its position.

Turning to the episodes of the revocation letters we come to circumstances which lend themselves to development of the agency relationship upon which respondents rely. The mailing of the letters to Carter & Higgins constituted, albeit crudely, an affirmative act which would support an inference that the Hanks were requesting Carter & Higgins to undertake the responsibility of communicating to the appropriate party the notice of termination of the indemnity agreement. We then come face to face with two divergent courses of conduct by Carter & Higgins. ▉ As discussed above the Orbia-Carol Hanks' letter was transmitted to INA in the medium of its San Diego branch office. The effectiveness of that transmission is indicated by the order to Carter & Higgins to desist from issuing performance bonds on behalf of Hanks Conard. The second requirement of an agency situation—consent by the agent—was provided by doing what was called for, delivery of the principals' communication to the party concerned.

▉ The H. E. Hanks letter had a different fate. Beyond the fact it was received by Carter & Higgins nothing is known. The testimony of Mr. Phillip Conard suggests that Higgins spoke to him about it on one occasion apparently only to ask him if he knew about it. Beyond that the evidence is silent. In differentiation from the treatment of the Orbia-Carol Hanks' letter, Carter & Higgins said and did nothing. Again, treating the H. E. Hanks letter as a solicitation of aid from Carter & Higgins or more precisely a request that Carter & Higgins act for H. E. Hanks, we are met with an absence of facts by which to show, or from which to infer, that Carter & Higgins either agreed or undertook so to act. Having earlier pointed out that no agency existed before the revocation letters we now must also conclude as to H. E. Hanks that no agency was created after his letter. The controlling factor is that Carter & Higgins remained silent and quiescent as it had the right to do. From the standpoint of ethics and simple social relationships Carter & Higgins, as strongly urged by respondents, might well have done a number of things which would have remedied the ignorance and error of H. E. Hanks, but legal responsibility may not be founded upon such a basis where no legal duty exists. Of necessity the failure to justify an agency finding eliminates the possibility of a finding of negligence in favor of H. E. Hanks. ▉ These conclusions eliminate the need to discuss the position of Dartha Hanks

since at best it would be no better than that of her husband; but we add that we are unable to find merit in the argument that she could expect to avail herself of his act of writing had it proved successful.

We have indicated our conclusion that the evidence was sufficient to sustain a finding of agency by Carter & Higgins for Orbia-Carol Hanks. This necessitates a classification of the agency, i.e., gratuitous or for hire, for the purpose of determining the standard of care by which to measure the conduct of Carter & Higgins.

The discussion which precedes relevant to the absence of agency from the inception of the indemnity agreement and the subsequent discussion concerning the effect and handling of the Orbia-Carol Hanks' letter are conclusive on the gratuitous nature of Carter & Higgins' assumption to act. Confronted with the bare fact of a letter whose thrust is to terminate a simple contract relationship with someone for whom Carter & Higgins was in fact an agent, we discern no possibility of consideration or benefit flowing to Carter & Higgins (Lab. Code, § 2850; *Brand* v. *Mantor*, 6 Cal.App.2d 126, 130 [44 P.2d 390]). Since the jury made a finding of an agency for hire upon the part of Carter & Higgins we must hold that a finding of gratuitous agency was necessarily included and the evidence was sufficient to support such a finding.

The conclusion that a finding of gratuitous agency must be sustained in favor of Orbia-Carol Hanks requires that we consider what responsibility was assumed by Carter & Higgins and whether that responsibility was negligently attended to.

The only responsibility we find implicit in the Orbia-Carol Hanks' letter, positive as it was in expression, was to deliver it to INA as the "real party in interest." This was done. At that point Carter & Higgins had done what Orbia-Carol Hanks had a right to expect them to do. INA upon delivery of the letter to it had written evidence before it that Orbia-Carol Hanks were terminating their agreement to indemnify. This is established by Mr. Hertsch of the San Diego INA office. After having said that even had he received a revocation "wrapped up in a blue ribbon and proper," he would have withheld sending it to Philadelphia until he could also provide the reason for the revocation, he testified:

"Q (By Mr. McDaniel) My final question is, though, isn't it true, Mr. Hertsch, that you did make an evaluation of this

letter as to whether it might or might not be a revocation? Isn't this true? A. Yes. Yes, sir.''

The point may be suggested that Carter & Higgins should have sent the notice to Philadelphia; that it should have done so because Carter & Higgins processed the indemnity agreement and knew the requirements of Paragraph 17. We have not found anything in the record which would require that Carter & Higgins have responsibility for or had actual knowledge of the contents of the indemnity agreement. With relation to Orbia-Carol Hanks that is not significant, however, for the reason the desired result occurred, delivery was made to INA with acceptance as a notice of revocation, as borne out by the testimony of Mr. Hertsch, part of which is quoted above. In addition, receipt of the notice by INA resulted in a direction to Carter & Higgins to write no more bonds. The notice of revocation was self-executing and nothing more was needed to be done.

We have scrutinized the record to determine whether there was shown any restriction upon the San Diego office of INA with respect to receiving the notice of revocation and the conduct of that office belies such restriction. We were able to find none and therefore hold that the delivery to the branch office was delivery to INA. The record shows affirmatively a practice whereby original ''letters of the kind [revocation] represented by plaintiff's [sic] 3 and 4 upon receipt by Carter & Higgins'' would be ''transitted to the company [INA] for underwriting information.'' It is a reasonable inference from all of the testimony of Mrs. Raper and Mr. Hertsch that ''to the company'' meant to the San Diego office.

Confirmation is also to be found from the interesting form of the answer of INA's Mr. Hertsch in response to the question why something was not done about the Orbia-Carol Hanks' notice when he said, ''Well, I'm afraid it was done, but it was not done by myself. It was done by an associate of mine.'' He could only be ''afraid it was done'' in recognition of the weakness of the INA litigation in having received, accepted and, in a highly significant manner, acted upon the revocation, in ordering that no further bonds be issued by Carter & Higgins.

These same facts warrant comment upon the matter of proximate cause with respect to the INA judgment against Orbia and Carol Hanks. If the notice of revocation had been

sent to Philadelphia and a bond had thereafter been issued, no liability would have attached to Orbia and Carol Hanks; the notice was self-executing. If the notice had gone to Philadelphia nothing would have happened which did not happen by delivery to the San Diego office. The 10-day waiting period provided in Paragraph 17 is obviously provided as a protection with respect to bonds written before communication may be made to the local offices. In the hands of the San Diego office the effect was the same or even more to the advantage of INA for it was acted upon by the issuance of a stop order as to future bonds, which would have been the most that Philadelphia could have done. Carter & Higgins, as far as the record shows, violated that order by issuing the February 15, 1963, bond long after the 10-day delay period had elapsed. However, the liability of Orbia and Carol Hanks was in no way dependent at this point upon the issuance of the performance bond; it was dependent upon whether the indemnity agreement had been terminated as to them. We have shown that it had been terminated by the conduct of INA. Since judgment was procured against them in the part of this total litigation which has not been appealed, the proximate cause of their injury was the erroneous outcome of the action in which they were defendants.

The judgment is reversed.

Brown (Gerald), P. J., and Coughlin, J., concurred.