[Civ. No. 31571.   Second Dist., Div. Five.   Nov. 27, 1968.]

TRANE COMPANY, Plaintiff and Respondent, v. ARTHUR GILBERT et al., Defendants and Appellants.

ENGLISH & LAUER, Plaintiff and Respondent, v. ARTHUR GILBERT et al., Defendants and Appellants.

(Consolidated Cases.)

Leland, Hoffman & Kalik and Horace L. Kalik for Defendants and Appellants.

Hanna & Morton and David A. Thomas for Plaintiffs and Respondents.

STEPHENS, J. — Defendants appeal from a judgment entered in favor of plaintiffs in these two cases which were consolidated for trial.

The Trane Company, a Wisconsin corporation qualified to do business in California, and English & Lauer, a California corporation, commenced separate actions against Arthur Gilbert and Edward Rothschild. Trane sought recovery of $8,405.13 as the purchase price of a Reliance Motor which it sold to Gilbert and Rothschild in April 1962 for installation

in the Union Bank Center Building, which building was owned and operated by Gilbert and Rothschild. English & Lauer sought recovery of $5,659.37 for certain materials and services furnished by it in the installation of said Reliance motor in 1962.

At trial, the parties stipulated that Gilbert and Rothschild had not paid any amount to either Trane or to English & Lauer. Gilbert and Rothschild sought to justify their failure to pay by contending that the 1962 motor was a replacement for a motor which had been installed in 1959, and which, they contended, was covered by an express warranty which was breached when said motor burned out in 1962.

The material facts which gave rise to this dispute are as follows: In 1959, defendants Gilbert and Rothschild, as partners, developed the Union Bank Center in Beverly Hills. Rothschild was the active partner for the coordination and overall supervision of the project. The plans were prepared by Sidney Eisenshtat, an architect, and called for a central air conditioning system of high velocity. Eisenshtat employed Samuel L. Kaye, a mechanical engineer, to plan and draw the specifications for the heating, ventilation, and air conditioning systems in the building.

The Del E. Webb Company was the general contractor for the building, and Mehring and Hanson Company, mechanical contractors, were the heating and air conditioning subcontractors. The Del E. Webb Company guaranteed the building for a period of one year from date of completion. The Trane Company is a manufacturer of air conditioning equipment. English & Lauer is the holder of an exclusive sales franchise in Southern California for Trane equipment.

In 1959, Trane and English & Lauer sold to Mehring and Hanson Company a CenTraVac centrifugal air conditioning system which was installed in the Union Bank Center Building.

The purchase of the CenTraVac was preceded by an extended period of negotiations in which Melvin Kodmur, a sales engineer for English & Lauer, dealt with Samuel L. Kaye in an effort to persuade him to use the Trane air conditioning system. During the course of these negotiations, Kodmur delivered to Kaye a CenTraVac brochure which was replete with statements that the Trane system was "foolproof," "failsafe," and "automatically protected against damage." Rothschild testified that he personally read this brochure, and in reliance thereon, authorized the selection of

the Trane system. The statements found in this brochure are not qualified by any time limitation.

Kodmur also delivered a loose-leaf equipment manual to Kaye. On the reverse side of the index page to this manual was an express warranty covering defects, switches and controls. This warranty was expressly limited to a period of one year from date of shipment, and was stated to be in lieu of all other warranties. Kodmur delivered a ''proposal'' to Mehring and Hanson containing the description and price of the CenTraVac which Trane proposed to furnish for the building. A copy of this proposal was also given to Kaye. On the reverse side of this document there was a warranty and one-year limitation thereof similar to that appearing on the reverse side of the index page to the equipment manual. Kodmur testified that he specifically called Kaye's attention to Trane's general terms, conditions, and warranties as they appear on the reverse side of the index page, and from time to time discussed the same with Kaye.[1]

Thereafter, Trane delivered its CenTraVac unit pursuant to a purchase order received from Mehring and Hanson. Mehring and Hanson installed said unit in the building, and it operated satisfactorily until April 1962, when the Reliance motor in the CenTraVac burned out. This was caused by the failure of an Allen-Bradley magnetic starter switch, which was a part of the CenTraVac control system. This failure caused the Reliance motor to operate after the oil pressure to the motor was cut off. The cause for the failure of the magnetic starter switch was never determined. Thereafter, Trane replaced the burned out motor, and English & Lauer installed the new one. This suit was brought to recover the purchase price and cost of installation of the new motor.

Rothschild testified that he never saw the proposal or the index page to the equipment manual, and was unaware of the limitations of warranty contained therein. Kodmur testified

---

[1]The reverse side of the index page, plaintiff's exhibit 4, contains the following:

''The Trane Company warrants for a period of one year from date of shipment that all Trane products (1) are free from defects in material and workmanship and (2) have the capacities and ratings set forth in The Trane Company's catalogs and bulletins; . . . . The Trane Company makes no warranty whatever with respect to motors, switches and controls, inasmuch as they are warranted separately by their manufacturers.

''THE WARRANTY AND LIABILITY SET FORTH IN THE PRIOR PARAGRAPH ARE IN LIEU OF ALL OTHER WARRANTIES AND LIABILITIES, EXPRESSED OR IMPLIED, IN LAW OR IN FACT, INCLUDING IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR PARTICULAR USE.''

that during the course of a conversation he had with Rothschild in 1960, Rothschild indicated at that time that he was aware that the unit was no longer covered by warranty. Robert De Klotz, a witness for plaintiffs, testified that in April 1962 Rothschild stated in his presence that he (Rothschild) was aware that the CenTraVac unit was no longer covered by warranty.

On the basis of the above facts and testimony, the trial court concluded inter alia: (1) that the statements contained in the Trane brochure were express warranties, but were limited in scope and duration by the terms contained in the later "proposal" and index page to the equipment manual; (2) that the express warranties which were given were limited to a one-year period; (3) that Samuel L. Kaye had knowledge of such limitations; (4) that Samuel L. Kaye was an agent of defendants and they were bound by his knowledge; and (5) that, in any event, defendant Rothschild personally had actual knowledge that there were no express warranties in existence at any time later than one year after the purchase of the CenTraVac unit. Accordingly, the trial court rendered a judgment for the plaintiffs in the amounts sought in their respective complaints.

The uncontradicted evidence in this case established that Samuel L. Kaye, the mechanical engineer, was employed by architect Sidney Eisenshtat and defendant Rothschild knew of such employment. Since defendants do not dispute the trial court's finding that Kaye had actual knowledge that the warranties given by plaintiff Trane were limited to a period of one year, we address ourselves initially to the question of whether Kaye's knowledge of the warranty limitation was imputable to defendants. The trial court so held on the basis of its finding that Kaye was defendants' agent. Defendants strenuously urge that there is no evidence to support this finding. At the time of trial, the parties entered into certain stipulations bearing on the issue of agency.[2]

It is axiomatic that findings of fact by a trial court must be sustained on appeal if there was substantial evidence before the trial court which, with inferences legitimately drawn therefrom, support the ultimate finding made. (*Beck* v.

[2]The parties stipulated: "Two: The said system was purchased by defendants through their architect Sidney Eisenshtat, the mechanical engineer Samuel L. Kaye, and Del Webb Construction Company, their general contractor." "Four: Trane Company furnished to defendants' agents a printed brochure labeled Trane CenTraVac catalog labeled DC Revised August 1958, which catalog describes the CenTraVac system."

*Arthur Murray, Inc.,* 245 Cal.App.2d 976, 979 [54 Cal.Rptr. 328].) ■ The question of whether one is an agent is ordinarily a question of fact, the determination of which by the trial court on substantial evidence will be binding on the reviewing tribunal. (*Rogers* v. *Whitson,* 228 Cal.App.2d 662, 672 [39 Cal.Rptr. 849]; *Borello* v. *Eichler Homes, Inc.,* 221 Cal.App.2d 487, 497-498 [34 Cal.Rptr. 648].) Such findings are controlling provided they are otherwise sustainable in law. (*Hanks* v. *Carter & Higgins of Cal., Inc.,* 250 Cal.App.2d 156, 161 [58 Cal.Rptr. 190].)

Defendant Rothschild testified that he had a ''turn key contract'' in which architect Eisenshtat was responsible in his supervisory capacity for handling all negotiations with third persons concerning the construction of the building. ■ As a general rule, an architect, as far as the preparation of plans and specifications is concerned, acts as an independent contractor; but so far as the performance of his supervisory functions with respect to a building under construction is concerned, he ordinarily acts as an agent and representative of the person for whom the work is being done. (5 Am.Jur.2d, Architects, § 6, p. 668; *Edward Barron Estate Co.* v. *Woodruff Co.,* 163 Cal. 561, 575 [126 P. 351, 42 L.R.A. N.S. 125]; see also: *Birch* v. *Hale,* 99 Cal. 299, 301 [33 P. 1088]; *Palmer* v. *Brown,* 127 Cal.App.2d 44, 59 [273 P.2d 306]; *Scribante* v. *Edwards,* 40 Cal.App. 561, 563 [181 P. 75].) ■ Whether in fact an agency has been created is to be determined by the relation of the parties as they exist under their agreement or acts. (*Nizuk* v. *Gorges,* 180 Cal.App. 2d 699, 707 [4 Cal.Rptr. 565].) ■ By defendant Rothschild's own admission and from other evidence adduced at trial as to the nature of his employment, it is clear that architect Eisenshtat was a general supervising agent for defendants. ■ The scope of the authority conferred may be determined by the conduct of the principal and agent in their business relationships. (Civ. Code, § 2315; *Warshauer* v. *Bauer Construction Co.,* 179 Cal.App.2d 44, 48-49 [3 Cal. Rptr. 570].) ■ The authority to appoint a subagent may be inferred from the employment of the agent in a position of general authority, which, in view of business custom and usage, or because of the nature and necessities of the business entrusted to the agent, ordinarily includes authority to appoint other agents. (Civ. Code, § 2349; *Brea* v. *McGlashan,* 3 Cal.App.2d 454, 464 [39 P.2d 877]; see also: *Owen* v *American Home Assur. Co.,* 153 F.Supp. 928; Rest. 2d Agency,

§ 79.) ▮ In the present case, the evidence established that architect Eisenshtat employed Kaye in his capacity as mechanical engineer to plan and draw the specifications for the heating, ventilation, and air conditioning systems to be used in the building. Furthermore, defendant Rothschild was personally aware that Kaye was so employed. Under such circumstances, it is inferable that the agent Eisenshtat was authorized to employ Kaye as subagent. Even if unauthorized, it is evident that defendant Rothschild must be held to have acquiesced in or ratified Kaye's employment. ▮ Where an agent is authorized to employ a subagent, or his act in doing so is ratified by the principal, the latter is, as to third persons, bound by the acts of the subagent to the same extent as if they had been performed by the agent. That is, the relation of principal and agent exists between the principal and subagent. (Civ. Code, § 2351.)

▮ The evidence and reasonable inferences drawn therefrom are clearly sufficient to sustain the trial court's determination that Kaye was an agent of defendants. Consequently, and as in the case of an agent employed directly by the principal, notice to the subagent is imputable to, and is the equivalent of, notice to the principal. (Civ. Code, § 2332; *Herzog* v. *Capital Co.*, 27 Cal.2d 349, 353 [164 P.2d 8]; 3 Am.Jur.2d, Agency, § 152, p. 543; Rest. 2d Agency, § 283.)

▮ Thus, it is a well established rule in California that the principal is chargeable with, and is bound by the knowledge of, or notice to, his agent, received while the agent is acting within the scope of his authority, and which is in reference to a matter over which his authority extends. (*Columbia Pictures Corp.* v. *DeToth,* 87 Cal.App.2d 620, 630 [197 P.2d 580]; *Dressel* v. *Parr Cement Co.,* 80 Cal.App.2d 536, 540 [181 P.2d 962]; see also *American Surety Co.* v. *Heise,* 136 Cal.App.2d 689, 695 [289 P.2d 103].) ▮ Kaye, as the mechanical engineer in charge of planning the air conditioning system, was certainly the proper person to receive literature concerning air conditioning equipment and terms of warranty. As stated in *Granberg* v. *Turnham,* 166 Cal.App.2d 390, 395 [333 P.2d 423]: ''The fact that he may or may not have reported this information to his principal is immaterial, for he was acting in the course of his employment and the principal was charged with knowledge of information acquired by him in the transaction of her business. [Citations.]

▮ 'An agent's knowledge of the content of a contract is imputed to his principal. This rule of law is not a rebutta-

ble presumption. It is not a presumption at all. It is a rule which charges the principal with the knowledge possessed by his agent.' [Citation.]''

The additional arguments advanced by defendants on this appeal are all predicated on the assumption that defendants neither knew nor were chargeable with knowledge of the time limitation of warranty. We have, however, concluded that Kaye's knowledge as agent that plaintiff Trane's warranty was limited to a period of one year was imputable to and binding on defendants.[3] Absent such constructive knowledge on the part of defendants, a different case might be pre-■■■■ ■■ As stated in *India Paint Co.* v. *United Steel Products Corp.*, 123 Cal.App.2d 597, 608 [267 P.2d 408]: ''Where, as in the case at bar, sales transactions are entered into on the basis of anterior warranties, it is universally held that an attempt to disclaim the binding effect of such warranties upon or after delivery of the goods, by means of language on an invoice, receipt, or similar notice, is ineffectual unless the buyer assents or *he is charged with knowledge of non-warranty as to the transactions.*'' (Italics added.)

Determination of the one issue makes the other matters raised by defendants of no merit. The judgment is affirmed.

Kaus, P. J., and Aiso, J., concurred.

---

[3]There is no issue presented other than that founded on express, as distinguished from implied, warranty.