[Civ. No. 47279. Second Dist., Div. Four. Nov. 12, 1976.]

BEATRICE E. DeSUZA, as Administratrix, etc.,
Plaintiff and Appellant, v.
KATHLEEN ANDERSACK, Defendant and Respondent.

**COUNSEL**

William B. Eley for Plaintiff and Appellant.

Ruston, Nance, McCormick & DiCaro and Edward K. Nance, Jr., for Defendant and Respondent.

**OPINION**

**JEFFERSON (Bernard), J.**—Plaintiff Christy P. Bronson DeSuza sought damages for personal injuries from defendants Kathleen Andersack and Robert and Mae Selleck, arising out of a motorcycle-automobile collision. These named defendants moved for summary judgments shortly before trial, and the judgments were granted. Plaintiff Christy having died, plaintiff Beatrice E. DeSuza, as administratrix of Christy's estate, has appealed. The appeal as to the Sellecks has been dismissed. Our review, therefore, concerns only plaintiff's appeal from the summary judgment entered in favor of defendant Andersack.

Defendant's moving papers consisted for the most part of deposition testimony of four persons, including herself. On June 20, 1971, defendant and her husband George had spent some time at their vacation home near Perris, California. The couple stopped at the Good Hope Cafe, about a mile and a half away, to eat and pick up some eggs before leaving for Los Angeles. The cafe was operated by Kenneth and Joan Harmon, friends of the Andersacks. After arriving at the cafe, defendant remembered that she had left some apricots behind at her vacation home. After discussion and at the suggestion of Mr. Harmon, it was agreed that Mrs. Harmon would drive defendant to the Andersack place to pick up the apricots and also to pick up a sweater that Mrs. Harmon had left there on an earlier occasion.

Mrs. Harmon had been drinking beer on this day, a fact of which defendant was aware. While driving an automobile registered to her daughter, Susan Long, with defendant as a passenger, Mrs. Harmon collided with decedent DeSuza's motorcycle as she was en route to defendant's home. A test administered to driver Harmon several hours after the accident revealed a blood alcohol reading of .07.

We refer briefly to the legal rules concerning summary judgment. The summary judgment procedure is set forth in Code of Civil Procedure, section 437c. ■ "The purpose of the summary procedure is to penetrate through evasive language and adept pleading and ascertain the existence or absence of triable issues. [Citations.]" (*Chern* v. *Bank of America* (1976) 15 Cal.3d 866, 873 [127 Cal.Rptr. 110, 544 P.2d 1310].) The trial judge makes this determination concerning triable issues by examining the "affidavits, declarations, admissions, answers to interrogatories, depositions and matters of which judicial notice shall or may be taken." (Code Civ. Proc., § 437c.) The judge may also draw reasonable inferences from the facts before him. (*People* v. *Rath Packing Co.* (1974) 44 Cal.App.3d 56, 61-64 [118 Cal.Rptr. 438].) ■ "Under well established rules governing summary judgment motions, the affidavits of the moving party are to be strictly construed and those of the opponent liberally construed. [Citation.] Nevertheless, a party opposing a motion for summary judgment which is supported by affidavits or declarations sufficient to sustain the motion, has the burden of showing that triable issues of fact exist." (*Chern, supra,* 15 Cal.3d 866, at p. 873.)

On this appeal, plaintiff offers two distinct theories as the bases for her claim that the record below reveals triable issues of fact concerning the

liability of defendant Andersack for the injuries sustained by plaintiff's decedent. Obviously, if either theory is viable, summary judgment was improperly granted. (*Residents of Beverly Glen, Inc.* v. *City of Los Angeles* (1973) 34 Cal.App.3d 117 [109 Cal.Rptr. 724].) However, we find no merit in either of plaintiff's contentions, as we now explain.

Plaintiff's first theory is that defendant Andersack could be held vicariously liable for plaintiff's damages as driver Harmon's principal, i.e., that the facts support the existence of a principal-agent relationship between them. Civil Code section 2295 provides that "[a]n agent is one who represents another, called the principal, in dealings with third persons. Such representation is called agency." And the Restatement Second, Agency, in section 1, describes an agent as one who acts "on [the principal's] behalf and subject to his *control* . . . ." (Italics added.)

The right of the alleged principal to control the behavior of the alleged agent is an essential element which must be factually present in order to establish the existence of agency, and has long been recognized as such in the decisional law. (*Flores* v. *Brown* (1952) 39 Cal.2d 622, 628 [248 P.2d 922]; *Harpst* v. *Kirkpatrick* (1972) 26 Cal.App.3d 482, 486 [102 Cal.Rptr. 621].)

In *Flores,* it was said that "when one person is driving another's automobile for the latter's benefit an inference of agency may be drawn. [Citations.] In such cases the right to control may be inferred from the owner's power over the way his automobile should be operated, particularly when he is present on the trip. On the other hand, it is settled that if one person is riding in another's automobile, the right to control may not be inferred merely because the trip is undertaken for the passenger's benefit and the destination is selected by him. [Citations.]" (*Flores, supra,* 39 Cal.2d 622, at pp. 628-629.) *Flores* went on to hold that a gratuitous act—that of driving a vehicle for another—does not of itself give rise to an agency relationship. "But it may not be held '. . . that one who performs a mere favor for another, without being subject to any legal duty of service and without assenting to any right of control, can be an agent. This is not the law.' " (*Hanks* v. *Carter & Higgins of Cal., Inc.* (1967) 250 Cal.App.2d 156, 161 [58 Cal.Rptr. 190].)

In the case at bench, we have the situation of two friends embarking on an errand in which both had an interest, in an automobile which was in the process of being transferred from the driver's daughter

to the driver. Neither the driver nor the passenger was asserting the right to control the conduct of the other. Plaintiff seeks to establish the control element by referring to Andersack's deposition testimony that she looked to the right when she and Harmon approached the intersection where the collision took place, arguing that this testimony supports the inference that Andersack was actively supervising Harmon's conduct. We disagree; it establishes nothing except that she looked, as passengers often do.

Plaintiff also relies upon the recent holding of *Johnson* v. *Peterson* (1974) 38 Cal.App.3d 619 [113 Cal.Rptr. 445], which found an agency relationship between the driver of an automobile and persons not present in the vehicle; it is readily distinguishable from the instant case, however, because of the familial relationship present. In *Johnson,* the driver was the defendants' 16-year-old daughter, driving her parents' automobile and engaged on family business—taking a younger sister to purchase shoes at the defendant mother's request or suggestion.

In the case at bench, the evidence does not establish any type of relationship from which an agency could be inferred. ■ While it is true that the existence or absence of agency is ordinarily a question of fact, triable by a jury, where the evidence, as here, is susceptible of only one inference, i.e., the absence of agency, no triable issue of fact is presented. (*Seneris* v. *Haas* (1955) 45 Cal.2d 811, 831 [291 P.2d 915, 53 A.L.R.3d 124].)

■ Nor is there sufficient evidentiary support for the imposition of vicarious liability on the theory that defendant Andersack was a coadventurer of driver Harmon. A joint enterprise has been defined as ". . . an undertaking to carry out a small number of acts or objectives, which is entered into by associates under such circumstances that all have an equal voice in directing the conduct of the enterprise." (Prosser, Law of Torts (4th ed. 1971) p. 475.) The author distinguishes joint enterprise from joint venture, because the latter, in his view, involves the factor of a common *commercial* purpose. The California Supreme Court has said that "[a] joint venture exists when there is 'an agreement between the parties under which they have a community of interest, that is, a joint interest, in a common business undertaking, an understanding as to the sharing of profits and losses, and a right of joint control.' [Citations.]" (*Connor* v. *Great Western Sav. & Loan Assn.* (1968) 69 Cal.2d 850, 863 [73 Cal.Rptr. 369, 447 P.2d 609, 39 A.L.R.3d 224].)

Clearly we are not dealing here with a joint undertaking for any commercial purpose. The situation resembles that of joint enterprise, and Prosser (at pp. 477 and 478) notes that "it is generally agreed that something more [to impose vicarious liability] is required for a joint enterprise than the mere showing of a contract or agreement to travel together to a destination for a common purpose. Something in the nature of a common business, financial or pecuniary interest in the objective of the journey is said to be essential. In this form the requirement of a mutual interest persists as a minimum in all courts, to the exclusion of all cases in which the parties are casually together for pleasure or for independent ends." (Fns. omitted.) Thus, it has been said that "[t]he term 'joint enterprise' is sometimes used interchangeably with 'joint venture' and sometimes to describe a *nonprofit* undertaking for the mutual benefit or pleasure of the parties. [Citations.] When used to describe a *business* or *commercial* undertaking, however, California decisions draw no significant distinctions between joint ventures and joint enterprises. [Citations.]" (*Connor, supra,* 69 Cal.2d 850, at pp. 863-864, fn. 6.) (Italics added.)

Driver Harmon and passenger Andersack were "casually together" for the pleasure of each other's company, as well as for the pursuit of independent ends, with no commercially purposeful venture in mind. Therefore, no vicarious responsibility may be imputed to defendant Andersack under such circumstances.

■ Plaintiff advances another contention for the liability of defendant Andersack apart from the theories of agency and joint venture. Plaintiff asserts that defendant Andersack owed an independent duty to third persons, including plaintiff's decedent, to prevent their injuries, because defendant rode with driver Harmon in the latter's automobile when defendant knew that Harmon had been drinking beer. We are asked to take judicial notice that since Harmon had an .07 blood alcohol reading several hours after the accident, she must have had a considerably higher reading at the time the accident occurred. For the purposes of this discussion, we accept the premise that Harmon's blood alcohol reading was higher at the time of the accident. Harmon testified that she had had only three glasses of beer on the day in question.

■ It is elementary that "[a]ctionable negligence involves a legal duty to use due care, a breach of such legal duty, and the breach as the proximate or legal cause of the resulting injury. [Citation.] The duty of

care [is] always related to 'some circumstance of time, place and person' [citation]." (*United States Liab. Ins. Co.* v. *Haidinger-Hayes, Inc.* (1970) 1 Cal.3d 586, 594 [83 Cal.Rptr. 418, 463 P.2d 770].) The issue with respect to the existence of a duty owed by a defendant to a plaintiff, the breach of which may create liability, is basically a question of law for determination by the court.

"The determination of duty is primarily a question of law. [Citation.] It is the court's 'expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.' [Citation.] Any number of considerations may justify the imposition of duty in particular circumstances, including the guidance of history, our continually refined concepts of morals and justice, the convenience of the rule, and social judgment as to where the loss should fall. [Citation.] While the question whether one owes a duty to another must be decided on a case-by-case basis, every case is governed by the rule of general application that all persons are required to use ordinary care to prevent others from being injured as the result of their conduct. [Citation.]" (Fn. omitted.) (*Weirum* v. *RKO General, Inc.* (1975) 15 Cal.3d 40, 46 [123 Cal.Rptr. 468, 539 P.2d 36].)

A primary consideration in establishing the element of duty is the foreseeability of the risk, even though foreseeability is a question of fact for the jury. (See *Weirum, supra,* 15 Cal.3d 40, at p. 46; *Dillon* v. *Legg* (1968) 68 Cal.2d 728 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316].) The California Supreme Court has summarized the principal policy considerations in establishing the existence of duty as follows: "[T]he major ones are the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved. [Citations.]" (*Rowland* v. *Christian* (1968) 69 Cal.2d 108, 113 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496].)

█ The duty one owes to conduct oneself with due care, however, is quite different from the duty that one may owe to control the conduct of another. A recent decision of the California Supreme Court tells us that "[a]lthough . . . under the common law, as a general rule, one person

owed no duty to control the conduct of another [citations], nor to warn those endangered by such conduct [citations], the courts have carved out an exception to this rule in cases in which the defendant stands in some special relationship to either the person whose conduct needs to be controlled or in a relationship to the foreseeable victim of that conduct [citation]." (*Tarasoff* v. *Regents of the University of California* (1976) 17 Cal.3d 425, 435 [131 Cal.Rptr. 14, 551 P.2d 334].) (Fn. omitted.)

With these principles in mind, we turn to plaintiff's contention that the societal goal of controlling drivers who have been drinking is sufficiently meritorious to impose a duty on passengers who accompany them to prevent harm to third persons who may be injured as a result. Remembering that foreseeability is a basic element required for establishing duty, we conclude that driver Harmon's collision with plaintiff's decedent may have been foreseeable by both Harmon and her passenger; and certainly the social interest in curbing drunk driving is great. We recognize that in *Vesely* v. *Sager* (1971) 5 Cal.3d 153 [95 Cal.Rptr. 623, 486 P.2d 151], it was held that a tavern operator who serves too much alcohol to a customer who then drives and injures a third person may be held liable for the injuries sustained. But *Vesely* determined that the tavern operator owed a duty of care to the injured plaintiff by reason of a legislative enactment which, although not providing for civil liability, was enacted to protect a class of persons of which the plaintiff there was a member against the type of harm suffered by such plaintiff as a result of the tavern owner's violation of the statute. (Bus. & Prof. Code, § 25602 (creating a misdemeanor for the sale of alcoholic beverages to an obviously intoxicated person).)

But *Vesely* did not find any *nonstatutory* duty owed by a noncommercial furnisher of intoxicating liquor to a party who might be injured by the person who was supplied the intoxicating liquor. Furthermore, *Vesely* is distinguishable from the instant case on both the issues of proximate cause and duty.

Whereas "the furnishing of an alcoholic beverage to an intoxicated person may be a proximate cause of injuries inflicted by that individual upon a third person" (*Vesely, supra,* 5 Cal.3d 153, at p. 164), we see no basis in the record below for a finding that passenger Andersack's mere riding in an automobile owned and driven by Harmon who may have been intoxicated can constitute a proximate cause of Harmon's accident with plaintiff's decedent. From the evidence before us no inference is

possible, as plaintiff asserts, that driver Harmon would have kept off the road had Andersack protested as to her condition. It is sheer speculation to argue that in the ordinary situation a passenger has the power to control the conduct of the driver of an automobile.

We also recognize that, as pointed out by *Valdez* v. *J. D. Diffenbaugh Co.* (1975) 51 Cal.App.3d 494, 505 [124 Cal.Rptr. 467], although the existence of a duty of due care owed by a defendant to a person injured may be imposed by statute, it also "may arise from the character of particular activities or from the nature of human society itself . . . ." But we hold that, in the instant case, neither the evidence nor logic supports or compels the expansion of a legal duty to encompass a passenger's passive act of knowing that a third person may be injured by an automobile driver who may be under the influence of intoxicating beverages. No triable issues of fact have been established in the case before us.

The judgment appealed from is affirmed.

Kingsley, Acting P. J., and Dunn, J., concurred.

A petition for a rehearing was denied December 6, 1976.