**NOT FOR PUBLICATION**

FILED

UNITED STATES COURT OF APPEALS

JUL 18 2016

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JANE ROES, 1-2, on behalf of themselves and all others similarly situated, | No. 15-15437 |
| Plaintiff-Appellee, | D.C. No. 3:14-cv-03616-LB |
| v. | MEMORANDUM* |
| SFBSC MANAGEMENT, LLC, | |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Northern District of California
Laurel D. Beeler, Magistrate Judge, Presiding

Argued and Submitted July 6, 2016
San Francisco, California

Before: SILVERMAN, and NGUYEN, Circuit Judges, and GARBIS,** District
Judge.

SFBSC Management, LLC ("BSC") appeals from the district court's denial of

its motion to compel arbitration. We have jurisdiction pursuant to 9 U.S.C. §

16(a)(1)(B). Because BSC was not a party to the performer contracts and failed to

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Marvin J. Garbis, United States District Judge for the
District of Maryland, sitting by designation.

establish that it has standing to enforce the arbitration clause, we affirm.[1] *See*

*Britton v. Co-op Banking Grp.*, 916 F.2d 1405, 1413 n.9 (9th Cir. 1990) (standing

is "always a threshold issue" when evaluating a motion to compel arbitration).

    1. Given BSC's denials and the contradictory evidence submitted in

connection with its motion to compel arbitration, we decline to treat the allegations

in the complaint as "judicial admissions" that establish BSC's standing to compel

arbitration as a matter of law. As the party seeking to compel arbitration, BSC

had the burden under the Federal Arbitration Act ("FAA") to show (1) the

existence of a valid, written agreement to arbitrate; and, if it exists, (2) that the

agreement to arbitrate encompasses the dispute at issue. *Ashbey v. Archstone*

*Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015). While the amended

complaint contains conclusory allegations that BSC acted as an "agent" of the

nightclubs and that BSC was able to manage certain aspects of the clubs, BSC

denied all of these allegations in its Answer and, more importantly, submitted

---

[1] We may reach a legal issue not passed upon below if the record has been fully developed. *See Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1094-95 (9th Cir. 2014). In addition, the panel "may affirm on any basis finding support in the record." *Hell's Angels Motorcycle Corp. v. McKinley*, 360 F.3d 930, 933 (9th Cir. 2004). Here, BSC agrees that the record was fully developed and asks that we decide the issue of standing on appeal. Our decision is limited to BSC's standing to compel arbitration as a non-signatory with respect to the specific nightclubs at issue in this case.

affirmative evidence contradicting Plaintiffs' allegations. For instance, Gary Marlin, who served as president of BSC and as a consultant thereafter, submitted multiple declarations in which he explained the relationship between BSC and the nightclubs in minimalistic, arm's-length terms. In other declarations, nightclub managers likewise described BSC only as a management consulting firm that provided contracts for the nightclub management as well as administrative services. Under these circumstances, Plaintiffs' allegations in the complaint alone do not conclusively establish BSC's standing to compel arbitration.[2] *See, e.g.,* *Nat'l Abortion Fed'n v. Ctr. for Med. Progress*, 134 F. Supp. 3d 1199, 1205-06 (N.D. Cal. 2015) (declining to treat alter ego allegations in complaint as binding

---

[2] BSC relies on two California state court cases for the proposition that alter ego or agency allegations in a complaint conclusively establish non-party standing for the purposes of arbitration. *See Rowe v. Exline*, 153 Cal. App. 4th 1276 (2007), *Thomas v. Westlake*, 204 Cal. App. 4th 605 (2012). Even assuming BSC's reading of those cases could apply notwithstanding the affirmative, contradictory evidence that BSC submitted, we note that those cases were decided under California's arbitration statute, Cal. Civ. Proc. Code § 1280 *et seq.*, whereas this case is governed by the Federal Arbitration Act. While the question of non-signatory standing draws on background principles of state substantive law on contracts, *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630-31 (2009), questions of arbitration procedure – including the effect of purported "judicial admissions" in a complaint – are governed by federal procedural law. *See Fid. Fed. Bank, FSB v. Durga Ma Corp.*, 386 F.3d 1306, 1311 (9th Cir. 2004) (stating that there is a "strong default presumption" that federal law, not state law, supplies the procedural rules for arbitration under the FAA).

judicial admissions on an issue for which defendants later had the burden of proof); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 916 (N.D. Cal. 2011) (declining to treat "agency" allegations as binding where defendants denied that they were agents and discovery subsequently revealed that the defendants were actually "independent contractors").[3]

2. BSC's own evidence fails to support its argument that it had a principal-agent relationship with the nightclubs (or vice-versa). Marlin, BSC's former president, stated only that his company provided "consulting and administrative services to the nightclubs," including "marketing and advertising, human resources support, payroll coordination, and contract review and administration." He also stated that the nightclubs were independently owned and operated, and that they had "differing policies and procedures" regarding the dancers' employment. While Darius Rodrigues, a former nightclub manager, said he believed that BSC controlled the nightclubs, neither he nor Marlin ever stated that the nightclubs controlled BSC. On the contrary, the declarations from Marlin, and two other nightclub managers portray an arm's-length contractual relationship in which BSC

---

[3] BSC concedes that it is not making any estoppel arguments. *Cf. Britton,* 4 F.3d at 744 (considering whether estoppel barred a plaintiff from denying allegations in a complaint regarding a defendant's status as an agent or successor in interest).

4

provides marketing, human resources support, and other administrative "services" for its independently operating "clients." And although BSC stated in its Answer that these services are provided "pursuant to written agreements" with the nightclubs, BSC never produced these agreements, so the extent to which those clubs could "control" BSC – let alone the extent to which BSC was authorized to "represent" the nightclubs in their dealings with third parties – was not established. *See Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1232-33 (9th Cir. 2013) (refusing to allow Best Buy to compel arbitration under an agreement between customers and DirecTV, based on agency, because "Best Buy has presented no evidence … that DirecTV controlled its behavior in ways relevant to Plaintiffs' allegations."); *Swift*, 805 F. Supp. 2d at 916 (denying non-signatory's motion to compel arbitration because evidence indicated that the alleged principals and agents were "corporate third parties simply engaged in arm's length business transactions").

Nor does the record show that BSC was the nightclubs' principal. BSC's own evidence contradicted Rodrigues' statement that BSC controlled the nightclubs. For instance, Marlin claimed that "Mr. Rodrigues' statement in his declaration that BSC 'exerts control over all aspects of the Nightclubs as well as the working relationship with the exotic dancers' is false." Marlin also stated that "BSC does

not own the nightclubs listed in Plaintiffs' Amended Complaint or Mr. Rodrigues' declaration" and that "[e]ach of the nightclubs is owned by a different company or business entity[.]" Marlin emphasized that BSC had "no role" in many aspects of the nightclubs' operations; "[a]s for BSC's role in the Nightclubs' working relationship with exotic dancers, BSC does monitor developments regarding state and local laws regulating exotic dancer conduct and it advises the Client Nightclubs on such issues." *See DeSuza v. Andersack*, 63 Cal. App. 3d 694, 699 (1976) ("The right of the alleged principal to control the behavior of the alleged agent is an essential element which must be factually present in order to establish the existence of agency, and has long been recognized as such in the decisional law."); *accord Batzel v. Smith*, 333 F.3d 1018, 1035-36 (9th Cir. 2003).

3. Finally, BSC failed to show that it was a purported alter ego of the nightclubs. "Ownership is a prerequisite to alter ego liability, and not a mere 'factor' or 'guideline.'" *S.E.C. v. Hickey*, 322 F.3d 1123, 1128 (9th Cir. 2003). Here, as discussed, BSC expressly denied owning the nightclubs and provided multiple declarations indicating that it maintained an independent, distinct business structure.

**AFFIRMED.**

6