NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA.,
Plaintiff,

v.

Kenneth R. SAUNDERS, Defendant.

No. CV 92–6690 DT (SHx).

United States District Court,
C.D. California,
Western Division.

Aug. 20, 1993.

Herbert P. Kunowski, Wilson, Elser, Moskowitz, Edelman & Dicker, Los Angeles, California, for plaintiff.

Gary Brown, Law Offices of Gary Brown, Century City, California, for defendant.

## ORDER **GRANTING** PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56(c)

TEVRIZIAN, District Judge.

### Background

This action arises out of defendant Kenneth Saunders' ("Saunders") December 28, 1982 purchase of a limited partnership interest in American National Associates 3 ("ANA-3"), a New York limited partnership. Saunders purchased an interest in ANA-3 following discussions with Marvin Schaffer ("Schaffer") of Rothschild Reserve International ("Rothschild"), the promoter of ANA-3. The purchase price paid by Saunders for such interest included two series of five promissory notes (the "Notes") each with a total principal amount of $143,000.00. The Notes, along with promissory notes executed by other investors who purchased limited partnership interests in ANA-3, were to be negotiated and endorsed by a financial institution, such as Morgan Guaranty Trust Company (the "Bank"), in consideration of a payment or loan made to ANA-3 by such institution. As an additional security for the payment or loan, ANA-3 wanted to obtain a bond guaranteeing payment of the promissory notes issued by its limited partners. To that end, in the fall of 1982, plaintiff, National Union Fire Insurance Company of Pittsburgh, Pennsylvania, ("National Union") was allegedly solicited by the sponsor of ANA-3 to issue a bond guaranteeing the payment of promissory notes to be executed and delivered to ANA-3 by the limited partners thereof. National Union agreed to issue such a bond, provided it was indemnified by each limited partner.

Saunders claims that at the meeting on December 28, 1992, Saunders and his attorney and advisor, Warren Ashmann, discussed the terms of Saunders' investment in ANA-3 with Schaffer. According to Saunders, Schaffer presented Saunders with several documents including some preliminary documents (the "Preliminary Documents"), describing the investment, as well as, the Notes and an Investor Application Financial Guarantee Bond for Limited Partners (the "Investor Application") and an Indemnity and Pledge Agreement (the "Indemnity Agreement"). As an inducement to issue such a bond, Saunders completed and executed the Investor Application and Indemnity Agreement. Saunders claims that Schaffer actually completed the Investor Application as Saunders communicated the information to him. The Indemnity Agreement stated that Saunders would protect National Union from any liability incurred by National Union as a result of the issuance of the bond, and that Saunders would reimburse National Union for any amounts paid as a result of Saunders' default, plus interest. According to Saunders, Schaffer represented to Saunders that the Investor Application was a form used to comply with the Internal Revenue Code and that Saunders would never be called upon to pay under the bond.

On or about June 2, 1983, pursuant to the above and similar documentation received by

other limited partners, National Union issued Financial Guarantee Bond No. 989–50–87 (the "Bond"), in favor of the Bank, guaranteeing payment of the last four promissory notes in each series of notes executed by the investors, and requiring National Union to make payment on such notes in the event of a default in payment by, among others, Saunders.

According to National Union, Saunders subsequently defaulted on the fourth and fifth notes in each series of Notes when they became due and payable on March 15, 1986 and March 15, 1987, respectively. National Union made payments in the total amount of $84,136.18 to the Bank on Saunders' behalf.

On September 23, 1988, National Union filed a Complaint against Saunders in the United States District Court for the Southern District of New York alleging that National Union is subrogated to the rights of a holder in due course, alleging breach of contract, requesting specific performance of Saunders' obligations under the Indemnity Agreement and requesting foreclosure and sale of defendant's interest in ANA–3. On December 12, 1990, the district court entered default judgment against Saunders. On April 6, 1992, the district court granted Saunders' Motion to Vacate the Default Judgment for defective service. On October 16, 1992, the district court granted Saunders' Motion to Transfer this action to the Central District of California pursuant to 28 U.S.C. 1404(a).

On December 15, 1992, Saunders answered the Complaint and filed a Counterclaim naming National Union and Schaffer as counter-defendants, alleging fraud and negligent misrepresentation and requesting rescission, and restitution and cancellation of the Notes and other instruments signed in the subject transaction. Saunders alleges that Schaffer used misleading Preliminary Documents and oral statements to induce Saunders' investment in ANA–3.

On July 9, 1993, National Union filed a Motion For Summary Judgment, which is now before this Court.

### Discussion

#### A. Standard

In deciding a motion for summary judgment, this Court follows Federal Rule of Civil Procedure 56(c) and the following cases: Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); Harper v. Wallingford, 877 F.2d 728 (9th Cir.1989); California Building Products, Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir.1987), cert. denied, 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988); Neely v. St. Paul Fire & Marine Insurance Co., 584 F.2d 341, 344 (9th Cir. 1978).

#### B. National Union's Prima Facie Case

National Union seeks summary judgment against Saunders on its Complaint for damages arising out of Saunders' alleged breach of the Indemnity Agreement. National Union claims that it is entitled to judgment for (1) the amounts due under the Notes and (2) performance by Saunders under, and/or damages for, breach of the Indemnity Agreement.

National Union claims that it has succeeded to the rights of a holder in due course of the Notes. Pursuant to New York Uniform Commercial Code § 3–302, a holder in due course is generally a holder who took the instrument for value, in good faith and without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person.[1] Saunders

---

1. The Indemnity Agreement provides that New York law would apply to any matter arising out of the agreement. Judge Stanton's Order, transferring this action from the Southern District of New York to this Court, provides that Saunders' "defense of fraud involves questions of fact to be determined in accordance with California law." National Union Fire Insurance Co. v. Kenneth R.

Saunders, 1992 WL 80732, 88 Civ. 6580 (LLS), Memorandum Endorsement Granting Defendant's Motion to Transfer, October 16, 1992. Therefore, this Court will apply California law to the issues raised by Saunders' defense of fraud and New York law to all other issues. However, in this Court's opinion, the resolution of the instant motion would be unaffected whether the

does not dispute that the Bank is a holder of the Notes in due course.

■ A subrogee is entitled to the same rights as the holder of the note, except that he may not improve his position by asserting the rights of the holder if he has been a party to any fraud or illegality affecting the instrument. New York Uniform Commercial Code § 3–201(1). Pursuant to the terms of paragraph 6 of the Bond, to the extent that National Union has made payments under the Bond in respect of one or more of the notes guaranteed thereby, National Union is subrogated to the rights of the holder of such notes. Here, the evidence demonstrates that National Union has made payments to the Bank, on Saunders' behalf, in the amount of $84,136.18. (Chan Decl. at p. 24).[2] Therefore, this Court finds that to the extent that National Union has made payments on the Notes, National Union is subrogated to the rights of the Bank, which is a holder in due course of the Notes.

■ In addition, National Union contends that it has demonstrated a prima facie case for recovery under the Notes. To establish a prima facie case for recovery under a promissory note, the holder must demonstrate execution of the note and a default in payment pursuant to its terms. *Hogan & Co., Inc. v. Saturn Management, Inc.,* 78 A.D.2d 837 (1st Dept.1980); *Shields v. Stevens,* 55 A.D.2d 1017, 391 N.Y.S.2d 849 (4th Dept. 1977). Here, it is undisputed that on or about December 28, 1992, Saunders executed the Notes and the Indemnity Agreement. Further, the undisputed evidence demonstrates that on March 15, 1986 and March 15, 1987, Saunders failed to pay the installments that were due under the Notes. *See* Chan Decl. at p. 24; Saunders Decl. at p. 5. Therefore, this Court finds that National Union has presented sufficient evidence to establish a prima facie case on its claim for the

amount due by Saunders under the Notes and the Indemnification Agreement.

## C. *Saunders' Fraud Claim*

■ Once the holder of a promissory note has established a prima facie case, the maker of the note must present evidence demonstrating the existence of a genuine issue rebutting the holder's entitlement to payment. *Shields,* 55 A.D.2d at 1017, 391 N.Y.S.2d 849. Here, Saunders contends that National Union may not recover for any amounts due under the Indemnity Agreement because National Union was a party to the alleged fraud perpetrated by Schaffer. The requisite elements to establish a prima facie cause of action for fraud are: (1) representation; (2) falsity; (3) knowledge of the falsity; (4) intent to deceive; and (5) reliance and resulting damages. *Cooper v. Equity General Insurance Company,* 219 Cal. App.3d 1252, 1262, 268 Cal.Rptr. 692 (1990).

■ In the instant case, Saunders claims that the record before this Court indicates that National Union was deeply involved in the underlying transaction between ANA–3 and Saunders. According to Saunders, Val Goldstein, a vice president of National Union, was personally involved in the ANA–3 transaction.[3] Further, Saunders claims that National Union would read the PPM for every deal in order to decide whether to provide a bond for that deal. Saunders contends that National Union obtained and reviewed copies of the PPM involved in the ANA–3 transaction before either the issuance of the bond or the acceptance of the Notes by the Bank. Thus, Saunders claims that National Union had actual or constructive knowledge of the alleged fraud perpetrated by Schaffer.

In this Court's opinion, Saunders has failed to present sufficient evidence to raise a genuine issue of fact as to whether National Un-

law of California or New York were applied. For example, the California Commercial Code contains substantially similar provisions to those of the New York Uniform Commercial Code discussed in this Order. *See* California Commercial Code §§ 3302(a)(2) & 3203(b).

**2.** "Chan Decl." refers to the Declaration of Kenneth Chan, a claims supervisor in the A.I. Management and Professional Liability Claim Adjust-

ers Division of American International Adjustment Company, Inc., which handles claims relating to financial guarantee bonds issued by National Union.

**3.** Val Goldstein testified that he has "never heard of a Marvin Schaffer." (Goldstein Depos. at p. 62).

ion was a party to any alleged fraud affecting the issuance of the Notes. The undisputed evidence demonstrates that Saunders did not rely on the PPM in deciding whether to invest in ANA-3. According to Saunders' own testimony, "the documents provided or shown to [Saunders] prior to [his] investing in ANA-3 did not include a Private Placement Memorandum." (Saunders Decl. at p. 2). Saunders further testified that he does not recall ever being provided with a PPM for this deal and that his first recollection of seeing the relevant PPM "was after this lawsuit commenced." (Saunders Decl. at p. 2). Instead, Saunders claims that he relied upon certain Preliminary Documents presented by Schaffer and oral statements made by Schaffer during their meeting on December 28, 1992. (Saunders Decl. at pp. 2–4). However, Saunders has presented no evidence to suggest that National Union was aware of or had any knowledge of any of the information in the Preliminary Documents or the statements allegedly made by Schaffer. As discussed previously, Saunders' only claim is that National Union was aware of the PPM that was used in connection with the ANA-3 transaction. Thus, there is no genuine issue of fact that Saunders cannot establish that he relied upon the PPM or that it caused him any harm or loss. *See National Union Fire Ins. Co. v. Woodhead*, 917 F.2d 752, 757 (2nd Cir.1990) (found that "even assuming the PPM contained a material misrepresentation ... the [defendants] never saw the PPM," and therefore, could not establish causation).

Saunders contends that the instant case is analogous to the case of *National Union Fire Ins. Co. v. Turtur*, 892 F.2d 199 (2nd Cir.1989). In this Court's opinion, Saunders' reliance on *Turtur* is misplaced. The fraud alleged in *Turtur* is not comparable to the fraud alleged in the instant action. In *Turtur*, National Union filed suit against the Turturs to recover payments allegedly due under indemnification agreements executed by the Turturs in connection with their purchase of an interest in a similar limited partnership as is involved in the instant case. The Turturs alleged that they relied on the PPM in deciding whether to purchase their interest in the limited partnership and that the PPM contained material misstatements of which National Union was aware. *See Turtur*, 892 F.2d at 205.[4] The Second Circuit agreed with the district court's conclusion that a genuine issue of fact remained as to whether National Union had any knowledge of the alleged misrepresentations in the PPM and affirmed the district court's denial of summary judgment on National Union's subrogation claim. *Id.* at 206.

As discussed previously, in the instant case, it is undisputed that Saunders did not read, nor rely upon, the PPM in making his investment decision. Therefore, in this Court's opinion, Saunders has failed to raise a genuine issue of fact as to whether National Union was "a party to any fraud or illegality" in connection with Saunders' purchase of his interest in ANA-3.[5]

**4.** In *Turtur*, the court addressed whether the indemnification agreements could be considered in tandem with the underlying subscription agreements for the limited partnership as part of an overall contract with the result being that if the latter were procured by fraud, then the indemnification agreements would be unenforceable. The court concluded that the issue of dependency of separate contracts "boils down to the intent of the parties," which is "usually inappropriate for disposition on summary judgment." *See Turtur*, 892 F.2d at 205; *see also In re Qintex Entertainment, Inc.*, 950 F.2d 1492 (9th Cir. 1991). In the instant case, this Court finds that genuine issues of fact remain as to whether the Indemnification Agreement and the underlying transaction should be considered in tandem as one transaction. However, such an issue does not affect the disposition of this motion and, for purposes of this motion, this Court considers the Indemnification Agreement and the underlying transaction as part of an overall contract.

**5.** In addition, in this Court's opinion, Saunders has failed to raise a genuine issue of fact as to whether the PPM contained any material misrepresentations. As discussed previously, Saunders' Opposition focuses on the alleged misrepresentations in the Preliminary Documents and Schaffer's oral statements. Specifically, Saunders claims that the information in the Preliminary Documents differed from that in the PPM. When discussing the PPM, Saunders focuses on what the PPM revealed and how that information contradicted the alleged misrepresentations in the Preliminary Documents. Thus, Saunders does not appear to even allege that the PPM contained any material misrepresentations. (*See* Opposition at pp. 7–11, 14–15).

### D. *Saunders' Agency Claim*

█ In addition, to his claim that National Union actually participated in the alleged fraud, Saunders asserts that National Union may not recover on its claim because Rothschild was acting as the special agent of National Union when Rothschild allegedly fraudulently induced Saunders to invest in ANA–3. Saunders alleges that an actual agency relationship existed between National Union and Rothschild. By statute, "[a]n agency is actual when the agent is really employed by the principal." Cal.Civ.Code § 2299. Actual authority is that authority which "a principal intentionally confers upon the agent, or intentionally, or by want of ordinary care, allows the agent to believe himself to possess." Cal.Civ.Code § 2316. Saunders claims that an actual relationship was created between National Union and Rothschild because "National Union formed a business relationship with Rothschild in 1982 and placed the application for [ ] bonds in its hands knowing that the promoter would present it to each limited partner who desired to purchase an investment with promissory notes." (Opposition, at p. 24). Thus, Saunders claims that an agency relationship existed "for the purpose of Rothschild soliciting applicants for bonds to be issued by National Union." (Opposition, at p. 24). However, Saunders has not presented any evidence to suggest that National Union ever represented to Rothschild that Rothschild or Schaffer would act as National Union's agent or that Rothschild would be employed by National Union. On the contrary, Chan declares that Schaffer was never employed by National Union in any capacity and that he was never authorized to execute documents on National Union's behalf or to otherwise act on National Union's behalf. (Chan Decl. at p. 25).

In addition, Saunders has presented no evidence that National Union had the right to control the actions of either Rothschild or Schaffer. "Under California law, the right of the alleged principal to control the behavior of the alleged agent is an essential element which must be factually present in order to establish the existence of agency." *Hingson v. Pacific Southwest Airlines*, 743 F.2d 1408, 1416 (9th Cir.1984) (citing *DeSuza v. Andersack*, 63 Cal.App.3d 694, 699 (1976)). Here, Saunders' only claim is that National Union placed the bond application in Rothschild's hands knowing that Rothschild would present the application to the investors. However, Saunders' contention has been squarely rejected in several cases with facts almost identical to the facts in this case. *See Turtur*, 892 F.2d at 207; *National Union v. Eaton*, 701 F.Supp. 1031, 1035 (S.D.N.Y. 1988). For example, in *Turtur*, the Second Circuit affirmed the district court's finding that no agency relationship existed between National Union and Rothschild because "the element of control by National Union [was] totally lacking." *Turtur*, 892 F.2d at 207 n. 5. The district court had found that the Turtur's claim that National Union created an agency relationship with Rothschild by delivering the indemnification agreements and other documents to the ANA syndicators to be presented to the investors, was "insufficient to establish an agency relationship, for lack of any showing that [Rothschild and the promotor] were subject to National Union's direction and control." *See National Union v. Turtur*, Fed.Sec.L.Rep. (CCH) ¶ 93,765, at 98,590 1988 WL 48695 (S.D.N.Y. May 9, 1988), *rev'd on other grounds, Turtur*, 892 F.2d at 199. Therefore, in this Court's opinion, Saunders has failed to raise a genuine issue of fact as to whether an actual agency relationship existed between National Union and Rothschild and Schaffer.

█ Saunders also contends that an ostensible agency relationship existed between National Union and Rothschild and Schaffer. "An agency is ostensible when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him." Cal.Civ.Code § 2300. The basis of the ostensible agency concept is estoppel, based on the acts or omissions of the principal. *Hartong v. Partake, Inc.*, 266 Cal. App.2d 942, 72 Cal.Rptr. 722 (1968). Here, the only evidence presented by Saunders is that National Union "knew that the [bond] application was to be presented to prospective investors in conjunction with offering materials." (Opposition, at p. 26). However, Saunders has provided no evidence that Na-

458

tional Union had any contact with Saunders, or Saunders' agents, prior to Saunders' execution of the documents at issue. In addition, as discussed previously, Saunders has provided no evidence that National Union had the right to control the behavior of either Rothschild or Schaffer.

In *Eaton*, 701 F.Supp. at 1035, a case with almost identical facts to the instant case, the court rejected the argument that an ostensible agency relationship existed between National Union and the partnership notwithstanding that the partnership collected premiums from investors, reviewed financial statements of investors and forwarded the investor applications to National Union, and that National Union evaluated the financial risks associated with the partnership. The court stated that "[e]ven if the [partnership and its agent] had National Union's apparent authority to obtain financial information on National Union's behalf from the limited partners, 'there is no basis for supposing that they were agents of National Union in marketing or making any representations about the limited partnership interests or for holding National Union responsible to [the investors] for their actions in that connection.'" *Id.* at 1035 (quoting *National Union v. Turtur*, Fed.Sec.L.Rep. (CCH) at ¶ 98,590). In this Court's opinion, Saunders has failed to present sufficient evidence to raise a genuine issue of fact as to whether Rothschild and Schaffer were acting as National Union's agents in connection with Saunders' investment in the ANA–3 partnership.

. Accordingly, this Court hereby GRANTS National Union's Motion for Summary Judgment on its Complaint pursuant to Federal Rule of Civil Procedure 56(c).

IT IS SO ORDERED.