Filed 9/29/17

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| RSB VINEYARDS, LLC,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>BERNARD A. ORSI et al.,<br><br>        Defendants and Respondents. | A143781<br>A145029<br><br>(Sonoma County<br>  Super. Ct. No. SCV 254248) |

This is a breach of warranty action **in the absence of a warranty.** Plaintiff RSB Vineyards, LLC (RSB) purchased a vineyard jointly owned by the four defendants, including a residence that defendants had renovated and converted into a wine tasting room. RSB later learned that the renovated residence was structurally unsound for commercial use and was forced to demolish it.

In response to RSB's lawsuit claiming misrepresentations and omissions in connection with the sale of the residence, defendants moved for summary judgment, offering evidence they had no knowledge of the various deficiencies in the building. While RSB provided no evidence to suggest defendants had actual knowledge of the problems, it did demonstrate that the deficiencies were so severe that defendants' construction professionals should have been aware of them and argued that this knowledge was imputed to defendants. The trial court granted summary judgment,

---

[*]     Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of the Discussion, part B, attorney fees.

reasoning that defendants could not be held liable for nondisclosure in the absence of evidence they had actual knowledge of the facts to be disclosed. We agree and affirm.[1]

## BACKGROUND

This action grows out of RSB's August 2011 purchase from defendants of a vineyard and building located in Healdsburg. Following the purchase, RSB discovered structural and other problems with the building that were not disclosed by defendants at the time of the sale. RSB's complaint (complaint), filed in September 2013, contains causes of action for breach of contract, intentional misrepresentation, negligent misrepresentation, fraud, and negligence.

Barely seven months after the filing of the complaint, defendants moved for summary judgment, arguing RSB's claims failed because RSB could not demonstrate defendants had actual knowledge of the building's flaws or made false representations. The motion was supported by declarations from each of the four defendants and excerpts from the deposition testimony of Robin Black, designated by RSB as its person most knowledgeable.

According to the evidence submitted in support of the motion, the four defendants, members of two families engaged in the business of viticulture and wine-making, purchased the real property in 2009. At the time, the main building on the property was a single family home, and defendants planned to convert it into a commercial wine tasting room. They also considered building a winery. Following the purchase, defendants hired an architect to design a remodel of the home and applied for a commercial use permit, which issued in April 2010 for a winery and tasting room. Once the use permit issued, defendants submitted the architect's plans to the County of Sonoma (county), which approved the plans after requiring some changes. Defendants, none of whom is a construction professional or possesses the skills of such a person, relied on their architect

---

[1]    We dismiss plaintiff's appeal from an October 8, 2014, judgment as that judgment was superseded by an amended judgment entered on April 13, 2015. The issues raised on the dismissed appeal are considered on the appeal from the amended judgment. (Code Civ. Proc., § 906.)

2

and county officials to insure the plans conformed to applicable building codes, and they had no reason to believe the plans were non-conforming.

The construction work was performed by a licensed contractor, in consultation with a structural engineering firm, and entailed, among other projects, tearing down an addition to the home, new framing and exterior work, replacing windows, renovating bathrooms, reinforcing the floor above the basement, installing new sewage disposal, plumbing, and electrical systems, repairing dry rot, and creating a parking lot. The work was inspected and approved by county officials, and a final certificate of occupancy for a "winery/tasting room" was eventually issued. Defendants began to conduct business in the tasting room upon issuance of a temporary occupancy permit in September 2010.

Soon after commencing business, the four defendants "decided that operating a joint tasting room was not to our liking so we decided to sell the property." During the sales process, they continued to conduct business. By August 2011, they had listed the property with a licensed real estate broker, who prepared an offering memorandum and placed an ad in a local paper. The offering memorandum stated that the property had a "vineyard-vested winery permit" and an "active tasting room" and attached a table describing the various permits issued for the property. The ad described the parcel as "[e]xceptional 19 acre vineyard parcel with operating tasting room, vested 20,000 case winery permit and 12 acres planted to vineyard." RSB submitted a proposed purchase agreement soon after, which defendants accepted subject to a counter-offer. Defendants provided to RSB a termite addendum, buyer's and seller's advisories, and other disclosures and documents, and they gave RSB the names of their architect, general contractor, and structural engineer. RSB waived all contingencies and inspection rights, and the sale closed the following month.

Each of the declarations submitted by defendants contained essentially the same affirmation. As two of the declarations stated, "[a]t no time before the sale to plaintiff did any person connected to the County or any of our own professionals ever inform me that the finished construction did not comply with any building codes or standards, that the plans or work were substandard or deficient in any regard, or not to code, or even just

3

to the level of good construction practices, or that the building was in any way unsuitable or unsafe for use as a tasting room, nor did I have any such knowledge from any other source, including my own observations." All declarants believed the work "met all applicable codes and standards." Each defendant specifically denied any knowledge, at the time of the sale to RSB, of the defects in the property alleged in the complaint and claimed no knowledge of any material defects in the property, either from personal observation or on information by others.

In her deposition, Black stated that RSB had no information to suggest that any of the defendants had actual knowledge of the deficiencies in the property cited in the complaint. She also could not recall any false representations made to her by defendants in connection with the property.

RSB's opposition to the summary judgment motion was supported by the declaration of Larry Miyano, a civil engineer familiar with the property, and excerpts from several depositions. According to Miyano, he was retained by RSB to evaluate a leaking deck on the renovated residence. Miyano concluded that the deck was not properly built and did not meet "live load requirements" for its intended use. This deficiency led him to investigate the building further. Miyano found the floor structure "insufficient" to support the required load. When he prepared an analysis of the work necessary properly to engineer the floor, the expense was found to be more than the cost of demolition and construction of a new building. Miyano also found the plans prepared by defendants' architect to be "unclear and substandard" and decided to inspect the building during the process of demolition. Based on that inspection, Miyano found deficiencies in the "shear path," the building's resistance to wind and seismic activity, weakening of a wall due to improper construction of a stairway, inadequate roof support, "cut down" and improperly spaced floor joists, dry rot that had been plastered over without repair, insufficient steel reinforcement of the foundation, and improper construction of a bathroom ceiling. Miyano expressed the opinion "that each of these [deficiencies] was substandard for commercial construction and . . . should have been

4

known by an engineer, contractor and architect who holds him or herself out as qualified to engage in commercial construction."

In a detailed written decision, the trial court granted the motion for summary judgment. The court reasoned that RSB was required to provide evidence creating a triable issue of fact regarding defendants' actual knowledge of the alleged defects in the property and failed to do so. The court rejected RSB's claim that knowledge of the defects could be imputed to defendants from the presumed knowledge of their construction professionals, concluding that an agent's knowledge cannot be imputed when actual knowledge is required. The court found a number of other arguments unavailing.

Following the grant of summary judgment, the trial court granted defendants' motion for contractual attorney's fees, awarding defendants the full amount of fees and expenses requested, $262,400 and $4,868, respectively, without further explanation.

## DISCUSSION

### A. Summary Judgment.

"A defendant moving for summary adjudication or summary judgment bears the initial burden to show that a cause of action has no merit by establishing that 'one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to that cause of action.' [Citations.] Once the defendant meets this burden, the burden shifts to the plaintiff 'to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto,' supported by evidence of specific facts and not mere allegations of the pleadings." (*Calemine v. Samuelson* (2009) 171 Cal.App.4th 153, 160 (*Calemine*).) " ' " " 'A trial court properly grants a motion for summary judgment only if no issues of triable fact appear and the moving party is entitled to judgment as a matter of law. [Citations.] . . .' . . ." . . . We review the trial court's decision de novo, liberally construing the evidence in support of the party opposing summary judgment and resolving doubts concerning the evidence in favor of that party.' " (*Ennabe v. Manosa* (2014) 58 Cal.4th 697, 705.)

5

## 1. The Trial Court's Purported Evidentiary Rulings.

Before considering the various causes of action, we first address RSB's contention that the trial court erred when it determined: that Black's testimony constituted a "binding admission" that defendants did not make an omission or misrepresentation and that Miyano's declaration was inadmissible. The record before us does not clearly establish the trial court made either ruling in its decision.[2] In any event, we agree with RSB that Black's deposition testimony was not a binding admission and that Miyano's declaration should be considered for purposes of demonstrating that the property was deficient in the various ways he specified and, as Miyano states, "an engineer, contractor and architect who holds him or herself out as qualified to engage in commercial construction" "should have . . . known" of these deficiencies. We therefore review the trial court's grant of summary judgment as though the purported rulings had not been made.

## 2. Intentional Concealment, Fraud and Deceit, and Negligence.

RSB's primary theory of recovery is that defendants knew or possessed constructive knowledge of the various defects uncovered by Miyano and failed to disclose those defects while under a duty to do so.

" '[T]he elements of a cause of action for fraud based on concealment are: " '(1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage.' " ' " (*Bank of America Corp. v. Superior Court* (2011) 198 Cal.App.4th 862, 870 (*Bank of America*).)

---

[2] Regarding the Miyano declaration, the trial court found summary judgment appropriate "[e]ven if Miyano's declaration is considered by the court."

6

"A real estate seller has both a common law and statutory duty of disclosure. . . . 'In the context of a real estate transaction, "[i]t is now settled in California that where the seller knows of facts materially affecting the value or desirability of the property . . . and also knows that such facts are not known to, or within the reach of the diligent attention and observation of the buyer, the seller is under a duty to disclose them to the buyer. [Citations.]" [Citations.] Undisclosed facts are material if they would have a significant and measurable effect on market value. [Citation.]' . . . Where a seller fails to disclose a material fact, he may be subject to liability 'for mere nondisclosure since his conduct in the transaction *amounts to a representation of the nonexistence of the facts which he has failed to disclose* [citation]' [citation]." (*Calemine*, *supra*, 171 Cal.App.4th at p. 161.)[3]

**a.     Defendants' Actual Knowledge.**

There seems little doubt that defendants were under a duty to disclose the deficiencies mentioned in Miyano's declaration, since they affected "the value or desirability of the property" and were not necessarily apparent to a diligent buyer. The obligation to disclose, however, only arose if defendants had actual or constructive knowledge of the deficiencies. (*Shapiro v. Sutherland* (1998) 64 Cal.App.4th 1534, 1544-1545.)

Defendants carried their initial burden of demonstrating that RSB could not prevail on a theory of intentional nondisclosure by submitting evidence that they did not know about any of the defects alleged by RSB. Black's deposition testimony confirmed that RSB lacked any evidence to controvert defendants' claims of ignorance. While this evidence was not conclusive in establishing defendants' ignorance of the alleged defects (*Yuzon v. Collins* (2004) 116 Cal.App.4th 149, 163 (*Yuzon*)), it sufficed to shift the burden to RSB to provide sufficient evidence of knowledge to create a triable issue of fact.

---

[3]     The parties' contract did not impose any additional disclosure requirements beyond those imposed by law, since it expressly required only "disclos[sure of] known material facts and defects" and "any and all other disclosures required by law."

7

RSB did not provide any direct evidence of defendants' knowledge, but this is not unusual. (*Blanchard v. DIRECTV, Inc.* (2004) 123 Cal.App.4th 903, 922 ["states of mind, can seldom be proved by direct evidence"].) Actual knowledge can, and often is, shown by inference from circumstantial evidence. (*Ortega v. Kmart Corp.* (2001) 26 Cal.4th 1200, 1206.) In that case, however, " 'actual knowledge can be inferred from the circumstances only if, in the light of the evidence, such inference is not based on speculation or conjecture. Only where the circumstances are such that the defendant "must have known" and not "should have known" will an inference of actual knowledge be permitted.' " (*Yuzon*, *supra*, 116 Cal.App.4th at p. 163; see also *Martinez v. Bank of America* (2000) 82 Cal.App.4th 883, 890-891.)

RSB's sole evidence of knowledge was Miyano's declaration, but the statements in that declaration are not sufficient to create a triable issue of fact regarding defendants' actual knowledge of the deficiencies. With the exception of the first two defects cited, the deck and floor structure, the deficiencies were discovered only during the process of demolition. There is no reason to think defendants would have known of them. Further, Miyano does not suggest that any of the defects would have been apparent to a non-professional. By Miyano's own concession, the defects he cited would have been apparent only to a professional who was familiar with structural engineering and commercial building code requirements. Even as to such professionals, he stated only that they "should" have known of the deficiencies, not that they "must" have known. Accordingly, Miyano's declaration does not provide circumstantial evidence sufficient to create a triable issue of fact that defendants either did or must have known of the defects in the property.

RSB argues that the "sheer number and severity" of the structural defects "could well give rise to an inference that Defendants knew that there were multiple defects with the Property." We do not agree. As noted, in order to create an inference of actual knowledge, circumstantial evidence must suggest that the defendant must have known of the matter to be disclosed. (*Yuzon*, *supra*, 116 Cal.App.4th at p. 163.) While Miyano discovered a wide range of problems, all of them are technical matters that would not be

apparent to a person unskilled in construction or structural engineering, and most of them became visible only upon demolition. With the exception of a leaky deck, none of the defects cited by Miyano are claimed to have created perceptible problems—such as, for example, a sagging or creaking floor.[4] In the absence of some evidence that defendants had reason to know of the defects, their sheer numerosity does not allow an inference of knowledge. In short, RSB failed to create a triable issue of fact as to defendants' actual knowledge of the deficiencies cited by Miyano.

b.      **Defendants' Imputed Knowledge.**

RSB argues that it was not required to demonstrate defendants' actual knowledge of the defects because the construction professionals defendants employed knew of some or all of the defects and, because the professionals were defendants' agents, their knowledge is imputed to defendants. We find RSB's contention unavailing. As discussed below, a principal is charged only with the knowledge of an agent acquired while the agent was acting in that role and within the scope of his or her authority as an agent. Because there is no evidence to suggest that defendants' construction professionals would have acquired information about the residence while acting as defendants' agents, RSB failed to create a triable issue of fact regarding the imputation of the professionals' knowledge.

RSB contends that "knowledge possessed by the professionals hired by a principal is imputed to the principal," citing *Trane Co. v. Gilbert* (1968) 267 Cal.App.2d 720 (*Trane*), but the case hardly stands for such a broad proposition of law. In *Trane*, the defendant developer retained an architect, who in turn retained a mechanical engineer to design an air conditioning system. After approximately three years, a motor in the system malfunctioned, and the developer refused to pay for the replacement motor. (*Id.* at p. 722.) During the process of designing the system, the engineer had become aware that the motor was covered by a one-year warranty (*id.* at p. 725), but the developer

---

[4]      Perhaps the leaky deck could have alerted defendants, but RSB has provided no evidence that the nature of the deck leaks would have led a non-professional to discover the structural inadequacy of the deck.

sought to avoid the warranty because he was not personally aware of it. (*Id.* at p. 724.) The plaintiff contended the developer was bound by the engineer's knowledge, which was imputed to the developer as the engineer's principal. (*Id.* at p. 725.)

The court noted that, "[a]s a general rule, an architect, as far as the preparation of plans and specifications is concerned, acts as an independent contractor; but so far as the performance of his supervisory functions with respect to a building under construction is concerned, he ordinarily acts as an agent and representative of the person for whom the work is being done." (*Trane, supra,* 267 Cal.App.2d at p. 726.) In turn, the engineer was a "subagent" of the architect in dealing with the supplier of the air conditioning system, and the developer was bound by the acts of the subagent to the same extent as those of the agent. (*Id.* at p. 727.) The engineer's knowledge of the warranty was therefore imputed to the developer under the "well established rule in California that the principal is chargeable with, and is bound by the knowledge of, or notice to, his agent, received while the agent is acting within the scope of his authority, and which is in reference to a matter over which his authority extends." (*Ibid.*) This latter statement embodies the actual holding of *Trane.*

However, California case law and statutes place important and significant limitations concerning the circumstances under which a principal is chargeable with and bound by the knowledge of his agent. While defendants had a contractual relationship with their construction professionals for the provision of services, "[n]ot all relationships in which one person provides services to another satisfy the definition of agency." (Rest.3d Agency, § 1.01, comment c.) Rather, Civil Code section 2295 defines an agent as "one who represents another . . . in dealings with third persons." (See also, Rest.3d Agency, § 1.01, comment (c); *Huong Que, Inc. v. Luu* (2007) 150 Cal.App.4th 400, 410-411.) The Restatement comment captures the essential character of this requirement of representation: "It has been said that a relationship of agency always 'contemplates three parties—the principal, the agent, and the third party with whom the agent is to deal.' [Citation.] It is important to define the concept of 'dealing' broadly rather than narrowly. For example, a principal might employ an agent who acquires information from third

10

parties on the principal's behalf but does not 'deal' in the sense of entering into transactions on the principal's account. *In contrast, if a service provider simply furnishes advice and does not interact with third parties as the representative of the recipient of the advice, the service provider is not acting as an agent.*" (Rest.3d Agency, § 1.01, comment (c), p. 19 [Italics added].) *Trane* recognized this same element when it noted that "an architect, as far as the preparation of plans and specifications is concerned, acts as an independent contractor; but so far as the performance of his supervisory functions with respect to a building under construction is concerned, he ordinarily acts as an agent and representative of the person for whom the work is being done."[5] (*Trane, supra,* 267 Cal.App.2d at p. 726.) RSB contends that a professional acts as an agent if he or she merely acts "for the benefit" of the purported principal, but that definition is unacceptably broad. One hopes, after all, that every retained professional acts for the benefit of the person retaining him or her. Instead, as section 2295 makes clear, an agent must act for the benefit of another "in dealings with third persons." The case cited by RSB to support its contention, *Garlock Sealing Technologies, LLC v. NAK Sealing Technologies Corp.* (2007) 148 Cal.App.4th 937, is not to the contrary. As that case states, an agent "holds a power to alter the legal relations between the principal and third persons," and the agent in that case acted in this traditional role. (*Id.* at p. 964.)

Any knowledge acquired by defendants' construction professionals about the renovated residence is not imputed to defendants because there is no evidence to suggest those professionals were acting in the role of agent when they acquired that knowledge. While it might be inferred that defendants' architect, at least, acted on behalf of defendants in dealing with local planning officials during the process of renovation, and therefore might have performed as an agent when acting in that role, there was no actual evidence of such representation with respect to any particular professional. Thus, the

---

[5] Technically, an independent contractor can be an agent, but we understand *Trane*'s reference to architects as "independent contractors" in this context to mean that they do not act in the role of an agent when "prepar[ing] plans and specifications." (*Trane, supra,* 267 Cal.App.2d at p. 726.)

11

record fails to support an inference as to which, if any, of the professionals might have qualified as agents for this purpose. More important, even assuming one or more construction professionals served in this role, the information that underlies RSB's claim of failure to disclose would not have been gained by these professionals in the course of their work as agents. It would have been gained while the professionals were planning or carrying out the work of renovating the residence. And, as *Trane* noted, when an architect is acting in his or her role as a designer, the architect is not working as an agent. The same is true for the other construction professionals employed by defendants, a general contractor and a structural engineer. Because the professionals' knowledge of the building's structure would have been acquired while acting in this role, rather than while acting as defendants' agents, it is not imputed to defendants.

The distinction is illustrated in the Supreme Court's ruling in *Herzog v. Capital Co.* (1945) 27 Cal.2d 349 (*Herzog*), on which RSB relies. In *Herzog*, the plaintiff purchased a defective building from the defendants, which the defendants' real estate agent had represented as in " 'sound condition' " and " 'perfectly intact.' " (*Id.* at p. 351.) In fact, as it later emerged, the agent had been told by the prior owner of the house that it leaked in heavy rain and saw the leaks for himself. By the time the plaintiff toured the house prior to purchase, the agent had caused the water marks on the plaster to be painted over, and the agent told the plaintiff "that there had been some leaks but that the house had been repaired and was " 'in perfect condition in all respects.' " (*Id.* at p. 352.) In holding that the defendants could be held liable for the agent's fraud, the court held, "it is clear that [the agent] knew of the defective condition of the house and that he was acting within the scope of his authority when he caused it to be refinished and newly painted, thereby effectively concealing the structural defects. The knowledge of an agent, which he is under a duty to disclose to his principal, is to be imputed to the principal [citation], and, accordingly, defendants are charged with [the agent's] knowledge. Under these circumstances they had a duty to reveal the hidden and material facts concealed by their agent and of which they had knowledge, and their failure to disclose them constituted fraud." (*Id.* at p. 353.)

12

As is clear from the foregoing description, the knowledge gained by the agent in *Herzog* was gained while acting as the defendants' representative and within the scope of that representation. For that reason, the agent had a fiduciary duty to reveal his knowledge to the defendants, and the defendants, in turn, had a duty to reveal it to the buyers of the home. In contrast, on the record before us, any information gained by defendants' construction professionals about the structure of the residence would have been gained while they were acting in the role of designers and builders, not as agents.[6] Accordingly, any knowledge of the construction professionals regarding the defects in the structure was not imputed to defendants.

Because RSB's fraud and deceit and negligence claims are similarly based on the duty of disclosure, summary adjudication of these claims was appropriate under the same rationale.

**3.      Intentional and Negligent Misrepresentation.**

To the extent RSB contends defendants made affirmative misrepresentations about the property, they have identified only the statements made in the offering memorandum that the property had a "vineyard-vested winery permit" and an "active tasting room."[7] However, RSB has failed to adduce competent evidence to support its contention that these representation are false. To the contrary, defendants' evidence establishes both that they had secured a winery permit and were actively operating a wine tasting room at the time of the sale. RSB's evidence did not raise a triable issue of fact as to the truth of this

---

[6]      While it is conceivable that some of the professionals' knowledge might have been gained in response to inquiries by local planning officials, and therefore while acting in the role of agent, there is no evidence in the summary judgment record to this effect. We cannot find a triable issue of fact on this ground merely on the basis of speculation.

[7]      In her deposition, Black testified that she was not aware of any affirmative misrepresentations by any of the defendants, and the summary judgment record contains no evidence of any statements by any of them. In its brief, RSB contends defendants' agent "prepared an Offering Memorandum concerning the property and its suitability as a winery and active tasting room." RSB does not specifically discuss any statements other than those cited in the text.

13

evidence. Accordingly, summary adjudication was appropriate for RSB's claims of intentional and negligent misrepresentation.

RSB treats these statements as constituting a representation that the property was suitable for use as a commercial tasting room. We find no basis for such a reading. Both are simple statements of fact about (1) an on-going activity at the property and (2) the issuance of a regulatory permit by the county. Neither statement constitutes a warranty about the propriety of the activities on the site. That a property is being used for a particular activity does not necessarily imply that the property satisfies all regulatory requirements for the activity. In any event, a cause of action for misrepresentation requires an affirmative statement, not an implied assertion. (*Apollo Capital Fund LLC v. Roth Capital Partners, LLC* (2007) 158 Cal.App.4th 226, 243.)

## 4. Breach of Contract.

RSB's claim for breach of contract is based on the contract of sale for the property. The primary contractual provisions underlying RSB's claim for breach of contract are those concerning disclosure, such as the provision requiring defendants to disclose "known material facts and defects" and make "other disclosures required by law." Because we conclude there is no triable issue of law regarding a failure to disclose by defendants, there is similarly no triable issue regarding a breach of such provisions.

RSB also claims defendants breached a provision of the contract requiring them to provide a Seller Property Questionnaire (SPQ), a standard-form disclosure document. The SPQ requires disclosure of a number of specific potential problems of which the seller is "aware," such as chemical contamination and insurance claims, material repairs to the property, structural and other defects, mold, boundary disputes, and other matters of concern. The record contains a blank SPQ form drawn up for the property, which was apparently never completed and submitted.

This claim fails because RSB cannot demonstrate a causal connection between the alleged breach and its claimed damages. (*Amelco Electric v. City of Thousand Oaks* (2002) 27 Cal.4th 228, 244 [" '[r]ecovery of damages for a breach of contract is not allowed unless acceptable evidence demonstrates that the damages claimed resulted from

14

and were caused by the breach' "]; *Daniels v. Select Portfolio Servicing, Inc.* (2016) 246 Cal.App.4th 1150, 1173 [elements of cause of action for breach include " 'resulting damages to plaintiff' "].)  RSB argues "[h]ad Defendants completed and returned the SPQ . . . , they would have disclosed most, if not all, of the challenged defects."  The SPQ requires disclosure only of "known" problems.  If defendants were unaware of the various deficiencies claimed by RSB, they were not required to disclose them in the SPQ, and, in any event, would have been unable to do so.  Accordingly, the failure to provide an SPQ would not have prevented RSB's loss.

In any event, RSB waived defendants' provision of a SPQ when it removed the sale contingencies prior to being provided with the SPQ.  The two contingency removal forms executed by RSB include a number of specific contingencies to be removed by the seller, including "reports/disclosures."  In executing a form on August 31, 2011, RSB stated it was removing "ALL Buyer contingencies," except "Acceptance of survey north line of property by Adobe Associates."  A later contingency removal form, executed by RSB on September 7, 2011, "removes any and all buyer contingencies."  Necessarily, once RSB released a contingency for reports and disclosures, it waived defendants' obligation to provide the SPQ.

RSB analogizes the contingency removal form to a prohibited "exculpatory clause," a contractual provision that purports to exempt a person from "liability for fraud or deceit based on intentional misrepresentation."  (*Manderville v. PCG&S Group, Inc.* (2007) 146 Cal.App.4th 1486, 1499-1500; Civ. Code, § 1668.)  The contingency removal form, however, does not exempt defendants from any liability for misrepresentation.  It simply waives their obligation to provide any further disclosures that would otherwise be required under the contract.  Had they made any affirmative misrepresentations, they would remain liable for those.

15

**B.** **Attorney's Fees.** [*]

RSB contends the trial court abused its discretion in awarding attorney's fees because there was insufficient evidence to support a finding of either a reasonable amount of time spent or a reasonable hourly rate.[8]

The parties' contract permitted defendants to recover "reasonable" attorney fees. Under these circumstances, the party seeking fees has the burden of providing sufficient evidence for the trial court to determine that the fees sought were reasonably incurred. (*Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 98 (*Gorman*).) This necessarily includes demonstrating both the reasonableness of the time spent by counsel and the reasonableness of the hourly compensation sought for that time. (See *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1131–1132 [attorney fees award must be "based on the 'careful compilation of the time spent and reasonable hourly compensation of each attorney . . . involved in the presentation of the case' "].) Although the submission of time records is not necessarily required (*Syers Properties III, Inc. v. Rankin* (2014) 226 Cal.App.4th 691, 698–699), a fee request " ' "ordinarily should be documented in great detail." ' " (*Concepcion v. Amscan Holdings, Inc.* (2014) 223 Cal.App.4th 1309, 1324.) " 'The evidence should allow the court to consider whether the case was overstaffed, how much time the attorneys spent on particular claims, and whether the hours were reasonably expended.' " (*Lunada Biomedical v. Nunez* (2014) 230 Cal.App.4th 459, 486–487.)

We review a trial court's decision on a motion for attorney's fees for abuse of discretion. " 'The "experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong." '

---

[*] See footnote *, *ante*.

[8] RSB also contends that if the summary judgment ruling were reversed, defendants would not be entitled to fees as prevailing parties. Because we affirm the grant of summary judgment, there was no error in the trial court's recognition of defendants as the prevailing parties.

16

[Citation.] 'Fees approved by the trial court are presumed to be reasonable, and the objectors must show error in the award.' " (*Laffitte v. Robert Half International, Inc.* (2016) 1 Cal.5th 480, 488 (*Laffitte*).)

In general, defendants' motion for attorney's fees satisfied the documentation requirements for such a motion. It was supported by the separate declarations of Matthew Good and John Holdredge, the primary attorneys who represented defendants in the trial court proceedings. These declarations explained the attorneys' experience and qualifications, the general nature of the work performed in connection with the litigation, their knowledge of prevailing rates charged by attorneys in the area, and the amount of time they and other professionals spent on the matter. Holdredge's declaration attached the attorneys' billing records, which contained detailed entries about the specific tasks performed on a daily basis. In opposition, RSB submitted the declaration of Gerald Knapton, an expert in evaluating fee requests, who criticized various aspects of defendants' attorneys' work and documentation and recommended an award of half the size requested by defendants.

RSB first contends the trial court erred in awarding attorney's fees for work done prior to the filing of the complaint, but there is no rule that attorney's fees may be recovered only for work done after the filing of a complaint. Clients often consult counsel when they become aware of the mere possibility of a lawsuit, and work done prior to the filing of a lawsuit may well contribute to its defense. In this case, for example, there is evidence of a stipulation negotiated between the parties prior to the filing of the lawsuit to waive a required mediation.[9] We find no error in the court's

---

[9] RSB contends that certain of the time entries for work performed prior to the filing of the complaint are improper because they relate to the type of work, especially deposition preparation, that could not have occurred prior to the filing of a complaint. As defendants' counsel explained in a declaration, these entries were merely misdated. Black's deposition, for example, occurred in January 2014. The cited time entries show deposition preparation work and the taking of the Black deposition in January 2013, supporting the obvious inference of a clerical error.

17

award of "pre-filing" fees. (See *Stokus v. Marsh* (1990) 217 Cal.App.3d 647, 656 [approving prefiling fees].)

Although RSB frames its remaining objections in a number of different ways, each argument reduces to the contention that the trial court should have accepted the views of Knapton, who carefully examined the time records submitted by Holdredge and cited various reasons for discounting the firm's bills, rather than awarding the full amount requested. Notwithstanding the expert's care, the trial court was not bound to accept his conclusions. (*Kirk v. Culley* (1927) 202 Cal. 501, 509 ["[w]hile expert testimony is clearly admissible, it is not conclusive either upon the jury or the trial court, which has 'the unquestioned power to fix the amount to be allowed for attorneys' fees, without, and independent of, expert testimony' "].) We find no abuse of discretion in the court's decision not to accept his many criticisms.

RSB argues defendants sought compensation for their counsel's time at a rate higher than that recommended by Knapton, without specifying the rates they actually charged. Compensation is to be based on "the lodestar," the "number of hours reasonably expended multiplied by the reasonable hourly rate." (*Holguin v. Dish Network LLC* (2014) 229 Cal.App.4th 1310, 1329; see similarly, *Laffitte*, *supra*, 1 Cal.5th at p. 489.) There is no requirement that an attorney be compensated at precisely the rate charged to his or her client. (*Syers Properties III, Inc. v. Rankin, supra,* 226 Cal.App.4th at p. 701 ["[t]here is no requirement that the reasonable market rate mirror the *actual* rate billed"].) In this case, defendants' attorneys provided evidence that the comparable hourly rates for attorneys of like experience and qualifications in the area were $600 for Holdredge, $500 for Good and other associates, and $200 for a paralegal.[10] RSB's expert contended counsel was entitled only to a blended rate of $421. The trial court is presumed to be familiar with the local legal market, and we have no reason to find his acceptance of defendants' testimony to be an abuse of discretion. RSB contends its expert's testimony

---

[10]    RSB contends these hourly rates were provided "[w]ith a lack of objective data," but counsel's testimony is sufficient evidence to support the rates.

18

was more carefully researched and considered, but that did not compel the trial court to accept his views.

RSB also contends defendants bore the burden of proving an entitlement to rates of compensation above the rates actually charged, citing *Ketchum v. Moses, supra,* 24 Cal.4th 1122. The argument misrepresents *Ketchum*, which discusses an award in excess of the lodestar, rather than in excess of the rate actually charged. (*Id.* at p. 1138.) Because the trial court compensated defendants' counsel at the lodestar rate, at least as testified by Holdredge and Good, no further proof was necessary.

RSB also contends the amount of fees requested by defendants should have been rejected because it was "objectively unreasonable," citing to *Gorman, supra,* 178 Cal.App.4th at page 99. The determination of reasonableness was for the trial court, and the amount requested and awarded, $262,400, is not so great as to appear "unreasonably inflated" as a matter of law, requiring reversal. While RSB's expert recommended cutting the amount by half, the trial court was not required to accept his cuts.

In their respondents' brief, defendants request an award of attorney's fees spent on this appeal. Because such fees must be sought in the trial court, in the first instance, we deny the request without prejudice. (See *City of Crescent City v. Reddy* (2017) 9 Cal.App.5th 458, 468.)

## DISPOSITION

The appeal from the judgment, filed October 8, 2014, is dismissed. The amended judgment, filed April 13, 2015, is affirmed. Defendants are awarded costs on appeal.

_____
Jenkins, J.

We concur:

_____
McGuiness, P. J.

19

_____

Pollak, J.

*RSB Vineyards, LLC v. Bernard A. Orsi et al.*, A143781, A145029

Trial Court:                                 Sonoma County Superior Court


Trial Judge:                                 Hon. Elliot Daum, Judge


Counsel for Plaintiff and Appellant:         David S. Markun, Edward S. Zusman,
RSB Vineyards, LLC:                          Kevin K. Eng
                                             MARKUN ZUSMAN FRENIERE &
                                             COMPTON LLP


Counsel for Defendant and Respondent:        Steven A. Hirsch
Bernard A. Orsi et al.                       Grace Y. Yang
                                             KEKER & VAN NEST, LLP

*RSB Vineyards, LLC v. Bernard A. Orsi et al.*, A143781 and A145029