Filed 7/16/25  P. v. Limon CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

|  |  |
|---|---|
| THE PEOPLE,<br><br>   Plaintiff and Respondent,<br><br>   v.<br><br>ARNO SACRAMENTO LIMON,<br><br>   Defendant and Appellant. | B337656<br><br>(Los Angeles County<br>Super. Ct. No. KA072152) |

APPEAL from an order of the Superior Court of Los Angeles County, Jacqueline Lewis, Judge.  Reversed.

Edward H. Schulman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Roberta L. Davis, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

Defendant and appellant Arno Sacramento Limon petitioned for resentencing under Penal Code section 1172.6[1] on his 2006 convictions for first degree murder (§ 187, subd. (a)) and premeditated and deliberate attempted murder (§§ 187, subd. (a), 664).  He claimed he was eligible for resentencing because his prosecution proceeded under the natural and probable consequences doctrine, which was subsequently eliminated as a basis of liability for murder and attempted murder.  (See Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015) (Senate Bill 1437); Senate Bill No. 775 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 551) (Senate Bill 775); *People v. Gentile* (2020) 10 Cal.5th 830, 847-848.)

The superior court denied the petition, finding that Limon had failed to make a prima facie case for resentencing.  Although Limon's jury had been instructed on the natural and probable consequences doctrine, the court reasoned he was ineligible for resentencing because we held in a prior opinion in this case that there was insufficient evidence to support a conviction under that doctrine.  (See *People v. Limon* (Aug. 22, 2007, B193220) [nonpub. opn.].)  Limon contends the superior court erred, and we agree.  Our previous evaluation of the evidence is not binding in proceedings under section 1172.6.  (See *People v. Harden* (2022) 81 Cal.App.5th 45, 50.)  Moreover, Limon's petition reached only

_____

[1] At the time Limon filed his petition, the applicable statute was found at Penal Code section 1170.95.  Assembly Bill No. 200 (2021-2022 Reg. Sess.) has since renumbered section 1170.95 as section 1172.6.  (See Stats. 2022, ch. 58, § 10.)  For clarity, we refer to the current citation as section 1172.6 throughout.  Unless otherwise specified, subsequent statutory references are to the Penal Code.

the prima facie stage, and the record does not show as a matter of law that the jury convicted him on a still-valid theory and not the natural and probable consequences doctrine. (See *People v. Curiel* (2023) 15 Cal.5th 433, 470.) We therefore reverse the denial of the petition and remand for an evidentiary hearing. We disagree, however, with Limon's contention that he is entitled to a trial by jury at the evidentiary hearing.

**FACTUAL BACKGROUND AND PRIOR PROCEEDINGS**

Because courts may not engage in factfinding at the prima facie stage (*People v. Lewis* (2021) 11 Cal.5th 952, 972), we summarize the offense conduct briefly and only as background for understanding the issues. This account is drawn from our prior opinion in Limon's direct appeal of his conviction. (*People v. Limon, supra*, B193220.)

"[Limon] is a member of the Pomona 12th Street gang. On the evening of August 30, 2005, Raksmey Pang and Soroeun Tith went to a Stater Brothers store in Pomona 12th Street gang territory.

"Pang testified that before he and Tith entered Stater Brothers, they noticed [Limon], who was talking on a pay phone outside the store. [Limon]'s shirt was off, revealing that he had gang tattoos. Pang and Tith soon left Stater Brothers, again noticing [Limon], who was still on the phone. Pang and Tith next proceeded to a Sav-On store across the street. As they were about [to] enter the Sav-On, [Limon] approached and asked the two where they were from. Tith responded that they were OAG (Original Asian gang). Pang said they did not want any trouble. [Limon] identified himself by his gang moniker, Slim, and said, 'This is 12th Street; you know what time it is?'

3

"Pang and Tith then went into the Sav-On. When Pang and Tith emerged a few minutes later, Pang saw [Limon], who was wearing a shirt, approach them from the left side. He also saw 'flames' come from the gun that was being fired by a bicyclist on Pang's right side. Pang ran, but was shot in the elbow, causing nerve damage. Pang did not see Tith, whom other evidence established sustained multiple gunshot wounds, including a fatal wound to the back of his head.

"A Stater Brothers surveillance camera captured images of the entrance to the store and the pay phone. As described by the investigating officer, images from the camera showed [Limon] appearing to talk on the phone starting at 7:08 p.m., a second individual (who was thought by the police to be [Limon]'s fellow Pomona 12th Street gang member Derrick Ortiz) approaching [Limon] at 7:11 p.m., [Limon] with his shirt off revealing his Pomona 12th Street gang tattoos at 7:21 p.m., the second individual riding up on a bicycle and approaching [Limon] starting at 7:24 p.m., Pang and Tith entering the store at 7:39 and leaving at 7:41 p.m., and [Limon] leaving the area of the phone at 7:42 p.m.

"A husband and wife who were driving by the Sav-On on their way home saw Pang and Tith in the store's parking lot. At home two or three minutes later and looking from the third-floor balcony of their apartment building, which is adjacent to the Sav-On parking lot, they saw Pang and Tith go toward the Sav-On and [Limon] go in the other direction. A minute later they saw [Limon] return and speak with another male, who was on a bicycle. The bicyclist then rode around to the back of the Sav-On. When Pang and Tith came out of the store minutes later, [Limon] first approached the two, then the bicyclist approached them

4

from a different direction and fired a gun at Pang and Tith three to five times. According to the husband, 'it was like a set-up, like [Limon] was setting them up to stay there while the guy on the bike was coming up.' The husband and wife then saw [Limon] and the bicyclist flee in the same direction. The wife was able to identify [Limon], but neither she nor her husband were able to identify the bicyclist." (*People v. Limon*, *supra*, B193220.)

The People charged Limon with one count of murder and one count of attempted murder. The trial court instructed the jury on the natural and probable consequences doctrine as to both murder and attempted murder based on the CALJIC No. 3.02 pattern instruction. The court listed simple assault (§ 240) as the target offense in the natural and probable consequences instruction, but it did not instruct the jury on the elements of simple assault.

The jury found Limon guilty of first degree murder and deliberate and premeditated attempted murder. In addition, the jury found that Limon committed both offenses for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(A)), and that a principal discharged a firearm causing great personal injury or death (§ 12022.53, subd. (d)).

In the direct appeal of his conviction, Limon argued that the trial court erred by instructing the jury on the natural and probable consequences doctrine and by failing to include the elements of assault as part of its instruction. We agreed, reasoning that "the record is devoid of substantial evidence (as opposed to speculation) that [Limon] intended to encourage or assist the bicyclist in merely assaulting, rather than trying to kill, Pang and Tith. Thus, because the prosecutor did not rely on the natural and probable consequences doctrine, CALJIC

5

No. 3.02 should not have been given irrespective of whether simple assault or assault with a deadly weapon was selected as the target offense or whether that offense was defined." (*People v. Limon, supra,* B193220.)

We nevertheless affirmed Limon's convictions, concluding the instructional error was harmless for two reasons. First, " '[b]ecause the parties made no reference to the "natural and probable consequences" doctrine in their arguments to the jury, it is highly unlikely that the jury relied on that rule when it convicted [Limon] . . . .' " *(People v. Limon, supra,* B193220, quoting *People v. Prettyman* (1996) 14 Cal.4th 248, 273.) Second, "even if the jury relied on the doctrine, the court's error in not defining assault was harmless because on this evidence the jury could not have reasonably concluded that [Limon] aided and abetted only a simple assault. At trial, the prosecution presented evidence of the victims' violation of [Limon]'s gang territory, the threat voiced by [Limon] when he asked the victims, 'you know what time it is?,' and [Limon]'s contact with the bicyclist which preceded the 'set-up' that was engineered immediately before the shots were fired. The jury reasonably could have decided only that [Limon] aided and abetted at the least an assault with a firearm, the natural and probable consequences of which were murder and attempted murder." (*People v. Limon, supra,* B193220.) Thus, Limon's "guilt was predicated on the sole theory of liability presented by the prosecution—that [Limon] aided and abetted the bicyclist in the premeditated murder and attempted premeditated murder of the two victims." (*Ibid.*)

On March 24, 2022, Limon filed a petition for resentencing under section 1172.6. The superior court denied the petition,

6

finding that our opinion in Limon's direct appeal precluded Limon from making a prima facie case.

## DISCUSSION

### A.     Background on Resentencing under Section 1172.6

Section 1172.6 allows certain defendants convicted of murder, attempted murder, or voluntary manslaughter to petition for their convictions to be vacated and to be resentenced. To be eligible for relief under the statute, it must be the case that "[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to [s]ection 188 or 189 made effective January 1, 2019." (*Id.*, subd. (a)(3).)  These changes to the law, enacted as part of Senate Bill 1437, amended section 188 to provide that, "Except as stated in subdivision (e) of [s]ection 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought.  Malice shall not be imputed to a person based solely on his or her participation in a crime." (*Id.*, subd. (a)(3).)  One effect of this amendment was to abolish the natural and probable consequences doctrine as a basis of liability for murder. (*People v. Gentile*, *supra*, 10 Cal.5th at pp. 847-848.)  Prior to the enactment of Senate Bill 1437, a defendant could be convicted of murder under this doctrine simply by acting as an accomplice in an offense that foreseeably resulted in the commission of a murder, even if the defendant did not share the mens rea of the killer. (*People v. Curiel*, *supra*, 15 Cal.5th at p. 449; *People v. Chiu* (2014) 59 Cal.4th 155, 164-165.)

In addition to abolishing the natural and probable consequences doctrine, Senate Bill 1437 also amended section 189 to restrict the application of the felony-murder doctrine, requiring greater personal culpability for a defendant to be liable under that doctrine. (See *People v. Strong* (2022) 13 Cal.5th 698,

7

707-708.) To convict a defendant of felony murder under the new law, the prosecution must prove that the defendant either was the actual killer (§ 189, subd. (e)(1)); acted with the intent to kill in aiding, abetting, commanding, encouraging, or soliciting the actual killer (*id.*, subd. (e)(2)); or "was a major participant in the underlying felony and acted with reckless indifference to human life" (*id.*, subd. (e)(3)).

To obtain relief under section 1172.6, a petitioner must first make a prima facie case for eligibility. (See *id.*, subd. (c).) "[T]he prima facie inquiry under [section 1172.6,] subdivision (c) is limited," and the resentencing court must " ' "take[] [the] petitioner's factual allegations as true" ' " and "should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' [Citation.]" (*People v. Lewis*, *supra*, 11 Cal.5th at pp. 971, 972.) The court may deny a defendant's petition if the record refutes the defendant's allegation that he is eligible for resentencing (*id.* at p. 971), but this does not occur "unless the record conclusively establishes every element of the offense" on a still valid theory. (*People v. Curiel*, *supra*, 15 Cal.5th at p. 463.)

If a defendant makes a prima facie case for resentencing, the court must issue an order to show cause (§ 1172.6, subd. (c)) and hold an evidentiary hearing where both parties may introduce evidence, and the prosecution bears the burden "to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended" by Senate Bill 1437. (§ 1172.6, subd. (d)(3).)

## B.    Limon Made a Prima Facie Case for Resentencing

Limon contends the resentencing court erred by denying his petition on the basis of our holding in his original appeal that there was insufficient evidence to support a conviction under the

8

natural and probable consequences doctrine.  We agree.  Our prior determination regarding the basis of Limon's conviction was based on our evaluation of the evidence, not merely the jury instructions and verdicts.  In other words, to reach our earlier conclusion before the enactment of section 1172.6, we engaged in " 'the weighing of evidence' " and " 'the exercise of discretion.' [Citation.]" (*People v. Lewis*, *supra*, 11 Cal.5th at p. 972.)  That is forbidden at the prima facie stage under section 1172.6.

Nor is our prior conclusion binding as the law of the case. The court in *People v. Harden*, *supra*, 81 Cal.App.5th 45 addressed this issue in a virtually identical situation.  In that case, the defendant was charged with murder under multiple theories, but the court, in affirming the conviction on direct appeal, "determined there was insufficient evidence to sustain a finding that [the defendant]'s role was anything other than that of [the victim]'s actual killer." (*Id.* at p. 50.)  The defendant later filed a petition for resentencing under section 1172.6, and the court rejected the possibility that the law-of-the-case doctrine precluded the defendant's argument that she was not the actual killer.  The court reasoned that that doctrine does not apply "where there is a ' "substantial difference in the evidence" ' on retrial of the particular issue." (*Harden*, *supra*, at p. 50, quoting *People v. Barragan* (2004) 32 Cal.4th 236, 246.)  Because "it is of course impossible to know what the evidence will ultimately be at an evidentiary hearing that has not yet occurred," the court concluded that "the law-of-the-case doctrine cannot conclusively establish disentitlement" to resentencing at the prima facie stage. (*Harden*, *supra*, at p. 50.)

The People argue we should nevertheless affirm the denial of the petition because it is not reasonably likely that the jury

9

interpreted the instructions as allowing for a conviction of first degree murder and premeditated and deliberate attempted murder on the basis of the natural and probable consequences doctrine. The United States Supreme Court has held that an ambiguous jury instruction violates due process only if there is a "reasonable likelihood" that the jury applied the instruction in a way that violates the Constitution. (*Boyde v. California* (1990) 494 U.S. 370, 380 [110 S.Ct. 1190, 108 L.Ed.2d 316].) In *People v. Estrada* (2022) 77 Cal.App.5th 941, the court applied this standard in a section 1172.6 proceeding and affirmed the denial of a resentencing petition at the prima facie stage. The jury at the defendant's trial had not been instructed on the natural and probable consequences doctrine, but it received an instruction on aiding and abetting stating that " '[u]nder some specific circumstances, if the evidence establishes aiding and abetting of one crime, a person may also be found guilty of other crimes that occurred during the commission of the first crime.' " (*Estrada, supra*, at p. 946, fn.3, quoting CALCRIM No. 400.) The court affirmed the denial of the petition because there was no reasonable likelihood the jury convicted the defendant on a natural and probable consequences theory on the basis of this instruction. (*Estrada, supra*, at pp. 947-948; see also *People v. Rushing* (2025) 109 Cal.App.5th 1025, 1031-1033.)

Unlike in *Estrada*, however, the jury in this case *was* instructed on the natural and probable consequences doctrine.[2]

---

[2] The instruction, which was based on CALJIC No. 3.02, stated as follows: "One who aids and abets another in the commission of a crime or crimes is not only guilty of that crime [or] those crimes, but is also guilty of any other crime committed

10

The People argue this makes no difference as to Limon's first degree murder conviction because the only instruction the jury received on the distinction between first and second degree murder was a pattern instruction on deliberate and premeditated murder based on CALJIC No. 8.20. That instruction stated, "If you find that the killing was preceded and accompanied by a

---

by a principal which is a natural and probable consequence of the crimes originally aided and abetted.

"In order to find the defendant guilty of the crimes charged in [c]ounts 1&2, you must be satisfied beyond a reasonable doubt that:

"1. The crime . . . of assault was . . . committed;

"2. That the defendant aided and abetted that . . . crime[];

"3. That a co-principal in that crime committed the crime[] of assault; and

"4. The crime[] of murder was . . . a natural and probable consequence of the commission of the crime[] of assault.

"In determining whether a consequence is 'natural and probable,' you must apply an objective test, based not on what the defendant actually intended, but on what a person of reasonable and ordinary prudence would have expected likely to occur. The issue is to be decided in light of all of the circumstances surrounding the incident. A 'natural' consequence is one which is within the normal range of outcomes that may be reasonably expected to occur if nothing unusual has intervened. 'Probable' means likely to happen.

"You are not required to unanimously agree as to which originally contemplated crime the defendant aided and abetted, so long as you are satisfied beyond a reasonable doubt and unanimously agree that the defendant aided and abetted the commission of an identified and defined target crime and that the crime of murder [and] attempted murder was a natural and probable consequence of the commission of that target crime."

11

clear, deliberate intent *on the part of the defendant* to kill, which was the result of deliberation and premeditation, so that it must have been formed upon pre-existing reflection and not under a sudden heat of passion or other condition precluding the idea of deliberation, it is murder of the first degree." (Italics added.) Because Limon was the only defendant, and this was the only instruction the jury received on first degree murder, the People argue that his first degree murder conviction implies a jury finding that Limon acted with the intent to kill.

But the People concede that another part of the same instruction stated, "To constitute a deliberate and premeditated killing, *the slayer* must weigh and consider the question of killing and the reasons for and against such a choice and, having in mind the consequences, he . . . decides to and does kill." (CALJIC No. 8.20, italics added.) Further, the People did not argue that Limon held the gun or pulled the trigger, and asserted someone else did. It would not require mental acrobatics for the jury to find on the basis of these instructions that Limon was guilty of first degree murder because he aided and abetted a simple assault, the natural and probable consequence of which was that the person he aided and abetted acted with premeditation and deliberation in killing a victim. Such a finding would have been consistent with the law at the time, which allowed convictions under the natural and probable consequences doctrine regardless of whether the aider and abettor shared the perpetrator's mens rea and, prior to the Supreme Court's decision in *Chiu*, contained no exception for first degree murder. (See *People v. Chiu, supra*, 59 Cal.4th at pp. 161-163.)

The People do not make the same argument regarding the jury instructions on Limon's attempted murder conviction

because, as they concede, the instruction on willful, deliberate, and premeditated attempted murder (see CALJIC No. 8.67) did not specify that *the defendant* must act with premeditation and deliberation. Instead, the instruction stated that "[i]f you find that the attempted murder was preceded and accompanied by a clear, deliberate intent to kill, which was the result of deliberation and premeditation, so that it must have been formed upon pre-existing reflection and not under a sudden heat of passion or other condition precluding the idea of deliberation, it is attempt to commit willful, deliberate, and premeditated murder." (*Ibid*.)

Nevertheless, the People contend that we may affirm the denial of the petition as to both the murder and attempted murder convictions by looking beyond the language of the instructions. They note that neither party discussed the natural and probable consequences doctrine during closing arguments. The prosecutor focused on direct aiding and abetting as the sole basis of Limon's guilt, and defense counsel argued that the jury should acquit him because he was either not at the scene or that the shooting was random and had no connection to Limon. But "[i]t is elementary . . . that the prosecutor's argument is not evidence and the theories suggested are not the exclusive theories that may be considered by the jury." (*People v. Perez* (1992) 2 Cal.4th 1117, 1126.) For this reason, "a prosecutor's argument should not be given ' "undue weight" ' when ' "analyzing how a reasonable jury understood . . . instructions." ' " (*People v. Virgen* (2025) 110 Cal.App.5th 440, 455, quoting *People v. Cortez* (2016) 63 Cal.4th 101, 131.) The prima facie stage (where we cannot consider or weigh trial evidence) requires Limon to demonstrate the prosecution was

13

allowed "to proceed under a theory of . . . murder . . . or attempted murder under the natural and probable consequences doctrine." (§ 1172.6, subd. (a)(1).) The instructions given to Limon's jury meet that prima facie burden here and, given the presence of a natural and probable consequences instruction, the verdict does not conclusively foreclose the possibility the jury relied on that doctrine to convict.

The People argue that we may consider the trial evidence to establish what " '*factual findings* [the verdicts] *necessarily reflect*, to determine whether the record of conviction refutes the factual allegations in [the defendant]'s petition.' " (*People v. Morales* (2024) 102 Cal.App.5th 1120, 1131, quoting *People v. Curiel*, *supra*, 15 Cal.5th at p. 465.) In *Morales*, the jury found that the defendant personally and intentionally discharged a firearm and caused great bodily injury. The court concluded that the only way to interpret that finding was that the defendant was the direct perpetrator of attempted murder. (*Morales*, *supra*, at p. 1132.) Limon's jury made no equivalent finding, and the Supreme Court's analysis in *Curiel* forbids us from drawing conclusions about the basis of a defendant's conviction in the absence of such a finding. In *Curiel*, the jury found true a gang-murder special circumstance (§ 190.2, subd. (a)(22)), which required the jury to find beyond a reasonable doubt that the defendant acted with an intent to kill (*Curiel*, *supra*, at p. 452). This finding did not justify denying the petition at the prima facie stage, however, because it remained possible that the defendant had acted with malice aforethought but did not directly aid and abet the murder. "[T]he question is not whether it is *likely* a defendant could have felt and acted in such a way, but whether the court's jury instructions foreclose that possibility

14

*as a matter of law*." (*Id.* at p. 470; accord, *People v. Lovejoy* (2024) 101 Cal.App.5th 860, 866.)

In the current case, as in *Curiel*, nothing in the jury instructions or verdicts shows as a matter of law that Limon was convicted as a direct aider and abettor, and we may not look to the facts of the case or our own prior analysis of the facts to fill in the blank. We must therefore reverse the denial of the petition.

## C. Limon Is Not Entitled to a Trial by Jury at His Evidentiary Hearing

At an evidentiary hearing under section 1172.6, subdivision (d)(3), the prosecution must prove beyond a reasonable doubt that the defendant remains guilty of murder or attempted murder under current law. The trier of fact at such a hearing is the resentencing court, not a jury. Limon contends this procedure violates his rights to due process and equal protection under the Fifth, Sixth, and Fourteenth Amendments, and that when we remand the case, we should instruct that he receive a new trial by jury.[3]

Limon acknowledges that "[c]ourts have unanimously held that section 1172.6 is an act of lenity in which the petitioner has no Sixth Amendment right to a jury trial." (*People v. Schell* (2022) 84 Cal.App.5th 437, 444; accord, *People v. James* (2021) 63 Cal.App.5th 604, 607-611; *People v. Anthony* (2019) 32

---

[3] The People contend that Limon forfeited this argument by failing to raise it before the resentencing court. We disagree. Because the court denied his petition at the prima facie stage, Limon has had no occasion to request a trial by jury at his evidentiary hearing. Rather than wait for Limon to raise this argument before the superior court following remand, we address it now in the interest of judicial efficiency.

15

Cal.App.5th 1102, 1156; see also *People v. Williams* (2020) 57 Cal.App.5th 652, 661-662 [hearsay is admissible in evidentiary hearings under § 1172.6 because such proceedings are not trials de novo].) These cases in turn are based on our Supreme Court's analysis in *People v. Perez* (2018) 4 Cal.5th 1055, a case involving resentencing under Proposition 36. Although the Sixth Amendment requires that "any fact other than the fact of a prior conviction that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt" (*Perez*, *supra*, at p. 1063, citing *Apprendi v. New Jersey* (2000) 530 U.S. 466 [120 S.Ct. 2348, 147 L.Ed.2d 435]), that rule does not apply to legislative " 'act[s] of lenity intended to give prisoners the benefit of later enacted' " laws. (*Perez*, *supra*, at p. 1063, quoting *Dillon v. United States* (2010) 560 U.S. 817, 828 [130 S.Ct. 2683, 177 L.Ed.2d 271].)

Limon argues *Perez* does not apply because it involved discretionary resentencing choices under Proposition 36, whereas "a [section 1172.6,] subdivision (d)(3) hearing is a fact finding mission to determine the defendant's underlying *legal culpability* for the crime charged in light of . . . revised Penal Code definitions." We are not persuaded. Both Proposition 36 and section 1172.6 provide an opportunity for defendants who were validly convicted under the law at the time to benefit from a subsequent change in the law. In other words, a petition under section 1172.6 "is the *opposite* of a criminal prosecution. A criminal prosecution can only hurt a defendant and can never help. The process here is the reverse: it can only help the defendant and can never hurt." (*People v. Mitchell* (2022) 81 Cal.App.5th 575, 588.)

16

Moreover, the extent of the retroactive effect of an ameliorative law is a matter of "legislative intent, not of constitutional law." (*People v. Esquivel* (2021) 11 Cal.5th 671, 679.) The Legislature took the unusual step of extending the potential retroactive benefit of Senate Bills 1437 and 775 to defendants whose convictions were already final, just as it had done with Proposition 36. Unlike in a retrial after a defendant's conviction has been overturned on appeal, a petitioner under section 1172.6 "was properly convicted of . . . murder [or attempted murder] under the law that was in effect at the time of his offense." (*People v. James*, *supra*, 63 Cal.App.5th at p. 609.) A defendant in Limon's position is not similarly situated to a defendant who has not been convicted, and it does not violate Limon's right to equal protection to deny him a new jury trial. "No constitutional provision required the Legislature to authorize relief under the conditions specified in section [1172.6] and none compels it to make the conditions subject to jury determination." (*Ibid*.)

## DISPOSITION

The superior court's order is reversed.  The court is directed to enter an order to show cause and to hold an evidentiary hearing as specified in section 1172.6, subdivision (d)(3).

NOT TO BE PUBLISHED

WEINGART, J.

We concur:

BENDIX, Acting P. J.

M. KIM, J.